No. ———

First Circuit

## PAYNE v. SEIBERT

(June 26, 1926. Opinion and Decree.)

*(Syllabus by the Editor.)*

1. **Louisiana Digest — Automobiles — Par. 7 (a), 8.**

Where, in an automobile accident, the proof fails to show that the driver of

the automobile truck was at fault or negligent when he struck the child, there can be no recovery for damages under Article 2315 of the Civil Code.

Appeal from the Parish of Tangipahoa. Hon. Columbus Reid, Judge.

Action by Claude Payne against Charles Seibert.

There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

Purser & Magruder, of Amite, attorneys for plaintiff, appellant.

W. W. Comish, of Jennings, and A. S. Burns, of Ponchatoula, attorneys for defendant, appellee.

ELLIOTT, J., dissents. Reasons attached.

MOUTON, J.   Defendant, while driving a truck around the corner from Oak street into West Railroad avenue in the town of Amite struck Jesse Lee Payne, the minor child of plaintiff, then about seven years of age, causing serious injuries to the child, for which this suit is brought against defendant in the sum of $2264.00, $2000.00 for the benefit of the minor and $264.00 for expenses incurred in his behalf by plaintiff.   The demand was rejected. Plaintiff appeals.

The proof shows plaintiff was walking with his boy, Jesse, and another of his boys, going from the railroad track westward towards Stern's Department Store when the truck driven by defendant came around the corner and, as it approached Railroad avenue, struck the child about the middle of the street, inflicting the injuries of which plaintiff complains.   Defendant was driving the truck which was loaded with a lot of wood upon which Powell, an employee, was sitting.   Several witnesses testified in reference to the speed

at which the truck was traveling at the time of the accident and as to whether defendant blew his horn when he turned the corner or prior thereto.

Three or four witnesses for plaintiff estimated the speed of the truck at the time at between fifteen and twenty miles an hour; one, however, fixed it at not more than fifteen.   The witnesses for defendant estimated the speed from ten to twelve miles and not more than twelve.   Some of the witnesses admitted they could not gauge the speed, but from their testimony the only inference to be deduced is that the truck was then moving at a low rate of speed.   All of these witnesses were near the Stern's corner or along the street and had about an equal opportunity in observing the rate of speed at which the truck was traveling.   The defendant, who was driving, says he was going between seven and twelve miles an hour.   His employee, Powell, who was sitting on the top of the wood, says the truck was moving not much over twelve miles.   It is possible that defendant, the driver, and Powell, who was sitting on the wood, were in a better position to judge of the rate at which the truck was moving than were the bystanders on the street who had no interest whatsoever in the running of that truck.   All of such testimony is, however, uncertain and cannot be taken as fixing with accuracy the rate of speed at which the truck might have been traveling.   At best, only an approximate estimate may be accepted from evidence of that character, which in this case justifies the conclusion that the truck was not going over twelve miles, and most probably at a lessor speed, when the child was run over.

The evidence shows that after defendant applied the brakes his truck skidded about ten feet.   This fact is shown by the imprint the wheels of the truck left on the roadway at the place where the accident

occurred. It seems to us that the character or weight of the vehicle would constitute an important factor, also the character of the roadway, in determining the speed of a motor vehicle by such imprints, if there be any possibility of rating the rapidity at which it might have been moving by the marks or imprints of the wheels. The only evidence we have on this subject is from the defendant, who says the truck "would have stopped a whole lot quicker without the load than with the load. The weight shoves it on". This explanation appears reasonable to us as weight would very likely add momentum to the movement of a truck and in the language of the defendant would "shove it on". This testimony throws a little light on the subject but leaves us without any criterion by which we could infer with any degree of certainty the rate at which a truck or auto would be traveling under such conditions. There is nothing in the record to assist us in fixing the speed at which the truck was then traveling by the imprints of its wheels which showed that it had gone some ten feet after the brakes had been put on. We do not think it was going at an excessive speed. In reference to the fact as to whether defendant blew his horn, Powell, who was riding on the wood, says defendant blew it as he was turning around the corner of the street. Defendant also testifies to the same fact, and adds that he had blown it a little while before as he passed a wagon a negro was driving. In this statement he is supported by his witness, Jenkins, who testifies he blew his horn at Stern's corner, and also a short time before as he passed the negro. It therefore appears that defendant, in this particular, was alive to the ordinary rule which requires autoists to blow their horns as they are rounding street corners, or when they undertake to negotiate crossings at the intersection of streets.

Louberta Temple, a colored woman, says she was near the place of the accident when it occurred. She testifies she was then going across the street from the east side to Stern's corner, the west side; that plaintiff, the injured child's father, had crossed the street just ahead of her with another of his little boys. She says she understood plaintiff to have said: "Come on, Jesse", or "run, Jesse"; that the child started across the street, got about halfway across right in front of the truck, and was struck, she thinks, on the right side of the truck. The record shows that plaintiff had crossed the street with his other boy, ahead of Jesse, the child that was injured. He does not deny this, but he denies that he called upon him to come across. In this respect he is contradicted by Dr. Smith, who attended to the child after he was hurt, and who says that plaintiff said he was crossing ahead of the child, and that if he had not called him or rushed him across the street he would not have been hurt. Several witnesses for defendant say that when the truck rounded the corner and came at about ten feet from the child, he suddenly ran in front of the truck and was struck. The defendant testifies that when he was about five feet from the child he dashed right in front of the truck; he saw that there was no chance of not hitting him and that he let the truck roll over him, then applied the brakes and stopped the truck. Powell, who was also in the truck, confirms this statement of defendant with this difference only, that he says defendant was at about six feet from the boy when he started across the street and jumped in front of the truck.

Henry Lewis, a witness for plaintiff, says it was just a sudden notion the child

took to cross the street, and that "when he did the truck was right on him". This witness says also that when the child got in front of the truck he stopped, and in referring to defendant, says: "But there wasn't any way for that man to stop then." Testimony of this character shows that the child was dangerously near the truck when he suddenly ran or dashed across the street and found' himself in front of the truck. He was evidently dazed by the position in which he found himself, as it is testified by most of the witnesses that he appeared as dancing or jumping in front of the truck before he was struck. Evidently the child, being called by his father, who had gone across the street ahead of him, was probably temporarily upset, and under the sudden emotion of the moment dashed or ran into the perilous position in front of the advancing truck in attempting to join his father on the other side. Tom Frazier, witness for defendant, says the child was looking at a signpost as his father was going across the street. The defendant says as he was coming along he saw this boy looking at a signpost, and that he dashed in front of his truck when he got a few feet from him. Powell also says he had stopped and was looking at this signpost on the side of the street, when he suddenly ran across in front of the truck. Obviously, childlike, this boy was fascinated by some picture on this signpost, and when unexpectedly called by his father, made a rush to go across and meet him on the west side of the street which resulted in the unfortunate accident. The estimate of the rate of speed the truck was traveling does not, as hereinabove stated, give with any degree of accuracy the number of miles it was moving per hour. The position of the child near the signpost, the suddenness with which

he started across, and the fact that several witnesses for defendant and one for plaintiff testified that defendant could not have stopped his truck in time to avoid the collision, show that defendant's truck must have been in very close proximity to the child when he ran or dashed in front of it.

Such being the situation existing at the time, even if the truck had been traveling at eight miles an hour, we are of the opinion that it could not have been stopped in time to avert striking the child, and that the accident would have been equally unavoidable. The proof therefore fails entirely to prove that defendant was at fault or negligent when he struck the child. This proof was essential to entitle plaintiff to recover under Article 2315, Civil Code. In the absence of such proof recovery cannot be allowed.

This relieves us of the necessity of discussing the other very interesting questions presented in the brief of counsel for plaintiff.

The demand was properly denied.

---

## DISSENTING OPINION OF ELLIOTT, J.

According to my appreciation of the evidence, the injury suffered by plaintiff's child was due to the fault, neglect and imprudence of the defendant. The street corner crossing where the injury occurred was in such steady use at the time in question that defendant, turning the corner with a motor truck loaded with a cord of wood should have taken precautions adequate to the situation. He had a clear view all around and he should have been looking and watching, not only ahead for other vehicles coming and going for his own safety, but he should have been watching both sides of the crossing for children and infirm people on foot about

to cross at the same time he was using the street. They had as much right to cross as he had to use the street. It was established by the defendant himself that he saw the child when it was in about five feet of his truck, that he made no effort to stop because he could not do it until he had run over the child. He then applied the emergency brakes and his truck, after skidding about ten feet, was brought to a stop. A speed that requires skidding ten feet before it can be brought to a stop is reckless at such a time and place, because stops to save life or limb at such times and places are generally emergency stops that must be sudden and within a distance of four or five feet, else there is no use in stopping at all. The stop that defendant made was of no use at all; he might as well have kept going. A stop that is not worth while is not an adequate precaution. Defendant was not watching the side of the street, else he would have seen plaintiff's child, stopped on the side, but in the act of starting across in his front. He heard the father call it and knew or should have known that it would do just as it did and should have stopped when the act would have saved running over it. A prudent man would have done that. It was imprudent not to do it. I am satisfied that the father called the child. It was an unsafe thing to do without first making sure that there was no motor vehicle coming that might strike him; but the thoughtless act of the father is not a bar to the action to recover in right of the child.

The defense of "accident" is not to my mind established. An accidental injury to a child at the time and place in question can be said to be some act or movement of the child which the defendant, acting prudently and with reasonable foresight, could not foresee and had no reason to expect. Defendant, acting prudently, was bound to know and foresee that the child standing on the side of the street, plainly within his view if he had been watching, was about to start across the street in his immediate front, and when he heard the father call it he should have stopped then, in time to avoid running over it. He should not have been going at a speed that it was no use to try to check until after he had run over it, because that was no precaution and the result of it was a matter to be foreseen.

Negligence in a case like the present can be said to be the failure on the part of defendant, driving a loaded motor truck, as he turned the corner and started across the passage used by people afoot, to observe this child and that it was about to start across the street in his immediate front and he should have made ready then to stop to save running over it, and when he heard its father call it and saw it start, he should have stopped. He should have been going at a rate of speed that he could have checked in time to avoid running over the child. To not look and see if a child or infirm person is in the act of starting across, to not see anybody in plain view and to not be able to stop if the emergency demands it is imprudence and negligence and equivalent to no precaution at all at such a time and place for the purpose of saving life and limb.

I think the evidence establishes a case of negligence and want of care on the part of defendant. The judgment appealed from should, in my opinion, be reversed and judgment for a reasonable sum rendered in favor of the plaintiff for the use of his child.