No. 3441

Second Circuit

THOMAS ET AL. v. NATURAL GAS PRODUCING CO. OF LA.

(December 19, 1928. Opinion and Decree.)
(January 21, 1929. Rehearing Refused.)
(February 25, 1929. Writ of Certiorari and Review denied by Supreme Court.)

Smith and McGregor, of Rayville, attorneys for plaintiffs, appellants.

Madison and Madison, of Bastrop, and Theus, Grisham and Davis, of Monroe, attorneys for defendant, appellee.

REYNOLDS, J. Plaintiffs, Mrs. Edith Thomas and her husband, Robert L. Thomas, seek by this action to recover judgment against defendant, Natural Gas Produce Company of Louisiana, she in the sum of $30,000.00 for the benefit of her separate property, and he in the sum of $10,000.00 for the use of the community existing between him and her.

She alleges that while she was carefully in the act of crossing a public street of the City of Bastrop, Louisiana, a motor truck belonging to defendant and operated by one of its servants struck and knocked her down and thereby permanently seriously injured her and caused her much pain and suffering. He alleges that he has expended $1500.00 and will be compelled to expend $8500.00 more for medical and surgical attention to his wife in the effort to cure her injuries and alleviate her suffering.

They allege that the accident was the result solely of the negligent and careless manner in which the motor truck was being operated and that she was free from negligence or carelessness.

Defendant denied that its servant was careless or negligent or that the motor truck was being operated carelessly or negligently and alleged that the accident was caused solely by plaintiff Mrs. Thomas' own carelessness, negligence and want of care.

On these issues the case was tried and there was judgment rejecting plaintiffs' demands and dismissing their suit and they have appealed.

OPINION

The only question presented for our determination is one of fact, namely: was plaintiff Mrs. Thomas negligent, and if so did her negligence cause or contribute to cause the accident.

It is plaintiffs' contention that at the time Mrs. Thomas was struck by the motor truck she had gotten across the street she had undertaken to cross and had arrived on the neutral ground or space between the pavement on the sidewalk and the curb separating the sidewalk from the street when she was struck and before she discovered that she was in danger of being struck. Her counsel, in brief, say:

"Mrs. Thomas was not guilty of any contributory negligence. She had a right to cross the street there and she actually got clear across and upon the curb before any danger appeared."

Defendant contends that Mrs. Thomas was in the street when struck.

Whether she was on the neutral ground or space between the paved part of the sidewalk and the curb separating the street from the sidewalk or was in the street is an important fact in the case.

J. S. Nimo, a witness for plaintiff, testified:

"Q. Now, when you saw the truck coming, about how far was that truck from

Mrs. Thomas? Where was Mrs. Thomas?

"A. The last time I saw Mrs. Thomas she had one foot upon the curb.

\* \* \* \* \* \*

"Q. Did you help pick her up?

"A. Yes, sir.

"Q. Where was she, with reference to the place where you saw her stepping her foot upon the curb?

"A. She was seven or eight feet out in the street.

\* \* \* \* \* \*

"Q. About how far from the place where you picked Mrs. Thomas up was the truck stopped?

"A. Well, I suppose 45 or 50 feet; in there, somewhere.

"Q. Was the truck at that time entirely in the street, or was it partly in the street and partly on the curb?

"A. It was in the street.

\* \* \* \* \* \*

"Q. Could you see where she was at the moment she was hit?

"A. Well, I can't tell just how far she was from the corner.

"Q. How far was she from the curbing of the street?

"A. She had one foot up on the curb.

\* \* \* \* \* \*

"Q. Could you say which wheel it was that made that mark in the parkway, whether the right wheel or the left wheel?

"A. It was the right wheel.

"Q. The right wheel of the truck?

"A. Yes, sir.

\* \* \* \* \* \*

"Q. About how far were those steps, where Mrs. Thomas went down in the street from Mrs. Davis' home, to the corner?

"A. Where she came out on the sidewalk?

"Q. Yes, sir.

"A. Well, I can't tell you.

"Q. Well, estimate it as nearly as you can.

"A. Well, maybe twenty or twenty-five feet.

\* \* \* \* \* \*

"Q. She was not crossing the street at the regular crossing of the block?

"A. No, sir.

"Q. Mrs. Thomas, as I understand it, came out of Mrs. Davis' gate to go across the street to her own home?

"A. Yes.

"Q. What did she have in her hand?

"A. A broom.

"Q. Was she looking directly across the street, or was she talking to Mrs. Davis?

"A. She was talking back to Mrs. Davis before she went around my car.

"Q. Your car was parked next to the curb, next to Mrs. Davis' home, as I understand it?

"A. Yes, sir.

"Q. Had Mrs. Thomas gotten across the street before she was struck?

"A. Yes, sir; she had one foot on the curb.

"Q. Did she go straight across the street, or diagonally?

"A. She went sort of angling across the street.

"Q. Angling across the street?

"A. Yes, sir.

\* \* \* \* \* \*

"Q. I understand you to say she was coming out of Mrs. Davis' gate on that sidewalk when you first heard this rattling of the truck?

"A. She came on in front of my car, and started across the street. I never seen the truck hit her, but I heard it, and I turned around and looked back. I had one leg hanging out of my right hand door.

"Q. You do not seem to get me. I want to know where Mrs. Thomas was actually standing or being at the time you first heard this truck rattling.

"A. Oh! When I first heard the truck, she had done passed in front of my car and started across the street.

\* \* \* \* \* \*

"Q. Your car was parked on the opposite side of the street from where Mrs. Thomas was hit?

"A. Yes, sir.

"Q. She had gone around your car when you first heard this rattling noise?

"A. Yes, sir; she came around in front of my car.

"Q. And that truck, I understand you to say, was 55 or 60 feet away from the place where Mrs. Thomas was hit?

"A. Yes, sir.

"Q. After hearing that truck, as I understand it, Mrs. Thomas continued on across the street, with a broom in her hand?

"^. Yes, sir.

"Q. And that was in the block—it was not at a crossing?

"A. She had gotten on the sidewalk the last time I saw her before the car hit her, she had one foot on the curb.

"Q. But she crossed the street between the two streets—or in the middle of the block, and not at the regular crossing?

"A. Yes, sir.

"Q. What was there to prevent Mrs. Thomas seeing that truck?

"A. Well, I didn't see nothing.

"Q. You saw nothing?

"A. No, sir.

"Q. It was making a great deal of noise, rattling those pipes or other things it was loaded with?

"A. Yes, sir. I couldn't tell whether it was pipes or what it was."

J. D. Higginbotham, a witness for plaintiffs, testified:

"Q. Just state what you saw?

"A. I saw the truck sitting between the curb and the sidewalk.

"Q. Did you notice any tracks on the parkway; that is, the earthen space between the sidewalk and the curb? Did you notice any truck tracks?

"A. In the space between the sidewalk and the curb?

"Q. Yes.

"A. Yes, sir; there were tracks there.

"Q. Were those tracks north or south, or both, of this little sidewalk leading from the curb to the steps?

"A. Why the tracks were there after the truck was moved south of that.

"Q. Did you notice any tracks north of that little sidewalk?

"A. No, sir; I didn't look; I don't remember seeing any.

"Q. You say the truck, when you got there was standing between the curb and the sidewalk?

"A. Yes, sir.

"Q. Can you say whether or not all four wheels were on the parkway?

"A. No, sir; I cannot positively say that all four wheels were, but I do remember the two front wheels being between the curb and the sidewalk. I taken particular pains to go around in front of it and look at it.

"Q. What is your best recollection with reference to the right rear wheel?

"A. Well, my recollection is that the right rear wheel was—I am not positive all four wheels were, but I am positive the two front wheels were, and the right rear wheel was."

Wilson Bradford, a witness for plaintiff, testified:

"Q. What did the truck do. You say you turned sideways to watch it when you was about the middle or a little north of the middle of Cypress street when you turned to watch the truck; what did the truck do?

     *    *    *    *    *    *

"A. Well, it seemed that it left the street and went upon the edge of—I don't know what you call it.

"Q. The parkway?

"A. Yes, sir.

"Q. What did it do?

"A. It kept on until it struck Mrs. Thomas.

"Q. Where was Mrs. Thomas just at the time you saw the truck leave the street and go over on the parkway; where was Mrs. Thomas at that moment?

"A. She was leaving the street and stepped up on—

"Q. Leaving the street?

"A. Yes, sir; she had stepped up on her side there.

"Q. Did you see the truck hit her?

"A. Well, I couldn't just exactly see it because the cab at that time was between me and her, but I saw her under the truck someway or another, and I saw her when the truck came over her, and I ran to her, and I said, 'Lordy, the Missus is dead.'

"Q. Where was she lying when you ran to her?

"A. She was lying there on the sidewalk on the grass with her head turned toward the pavement.

"Q. Did anybody else go up there?

"A. There were two white gentlemen, I didn't know who they were, but they were two white gentlemen.

     *    *    *    *    *    *

"Q. Are you positive she was not in the street?

"A. No, sir; she was not in the street at all.

"Q. What was she doing when you got to her?

"A. Lying there.

\* \* \* \* \* \*

"Q. Wilson, when you use the word 'cab,' you mean the cab on this automobile you have been talking about?

"A. Yes, sir.

"Q. That was between you and Mrs. Thomas at the moment it struck her, and you could not see where she was hit?

"A. No, sir.

"Q. Or what part of the car hit her?

"A. No, sir; I couldn't tell that at all.

"Q. Did you see the wheels of that truck run over Mrs. Thomas?

"A. No, sir; I don't know what ran over her.

W. O. Willis, a witness for plaintiff, testified:

"Q. Did you see them pick Mrs. Thomas up?

"A. Yes.

"Q. Where from?

"A. Right on the edge of the curb.

"Q. State whether she was in front of the truck you saw standing there or behind it or where?

"A. She was behind it.

"Q. Was Mrs. Thomas in the street or on that neutral ground or grass plot next to the sidewalk?

"A. She was in the street; lying right next to the curb.

"Q. And was behind this truck?

"A. Yes."

These four witnesses for the plaintiffs are at variance with each other as to the place where and manner in which the accident happened.

G. C. Henry, a witness for defendant, testified:

"Q. Where was Mrs. Thomas at the time she was struck?

"A. About six feet from the curb.

"Q. Do you know what part of the car struck her?

"A. The fender.

"Q. Which fender?

"A. The left front fender.

\* \* \* \* \* \*

"Q. I believe you stated, but I want to get it clear, that you saw Mrs. Thomas start walking and then start to run?

"A. Yes, sir; she was walking until she saw the car coming, and then she started to run.

"Q. I asked you which way she went across the street, with reference to the path of the truck coming from the north?

"A. She went kind of down this way (indicating) when the truck was coming.

"Q. Kind of down toward Bastrop?

"A. Yes, sir; at an angle across the street, trying to get away.

\* \* \* \* \* \*

"Q. What, if anything, attracted your attention to the car?

"A. Well, I just saw there was going to be an accident; I had been watching the bull team; and I saw there was going to be an accident, and I jumped up.

\* \* \* \* \* \*

"Q. You say Mrs. Thomas was about six feet in the street when she was hit?

"A. Yes, sir.

"Q. Did that truck leave the street and go upon the curb?

"A. Yes, sir; two wheels of it did; half the car was up on top.

"Q. The two front wheels left the street?

"A. No, sir; a front wheel and a back wheel.

"Q. A front wheel and a back wheel?

"A. Absolutely right.

"Q. Left the street, went over the curb and on to that parkway?

"A. Yes, sir.

"Q. You saw that, did you?

"A. Yes, sir.

"Q. How far did that truck run down that parkway before the driver got it stopped?

"A. I imagine about fifteen feet.

"Q. You first saw him when he was crossing Cypress street?

"A. Yes, sir; he passed me at Cypress street.

\* \* \* \* \* \*

"Q. The next thing you saw him do was to run upon that parkway?

"A. No; I saw Mrs. Thomas and him when they met. I saw him hit her.

"Q. Was there anything to prevent him turning to the left out in Washington street?

"A. If he had turned to the left he would have run over her.

\* \* \* \* \* \*

"Q. She came out from behind that wagon?

"A. Yes, sir.

"Q. At the moment this man was across Cypress street?

"A. Yes, sir.

"Q. And when she was hit she was approximately six feet from the curb?

"A. Yes, sir.

"Q. And it was the left fender that hit her?

"A. Absolutely right.

\*     \*     \*     \*     \*     \*

"Q. Did you see Mrs. Thomas start across the street from the east side?

"A. I never saw her until they were just meeting like, and I knew there was going to be an accident. I imagine she was about six feet from this side when I saw her.

"Q. From the west side?

"A. Yes, sir.

\*     \*     \*     \*     \*     \*

"Q. How many feet did you say Mrs. Thomas was from the curb at the time she was struck?

"A. Six feet.

"Q. At the time she was struck?

"A. Yes, sir.

"Q. Do you mean that Mrs. Thomas was six feet from the curb at the time the automobile was opposite you on the north line of Cypress street?

"A. I imagine about that.

"Q. Now, when Mrs. Thomas was struck, do you know where she fell?

"A. She fell when this truck hit her; she fell back on her hip, kind of like.

"Q. On the street or on the neutral ground?

"A. She fell in the street—on the concrete.

"Q. On the street?

"A. Yes, sir."

Albert Anderson, a witness for defendant, testified:

"Q. Who were you employed by in August, 1926?

"A. Natural Gas Producing Company.

"Q. Do you remember the occasion of an accident down on north Washington street on August 16, 1926?

"A. Yes, sir.

"Q. Were you driving the truck that was in that accident?

"A. Yes, sir.

"Q. Tell the court exactly what happened.

"A. I was driving the truck. I was driving the truck coming to town, coming south, and a car was parked on the right hand side, and Mrs. Thomas ran out from behind it and in front of mine before I could see her, and I didn't have time to stop.

"Q. You say a car was parked on the right hand side?

"A. On the left hand side; on the left of the way I was going.

"Q. Parked on the left, going south?

"A. Yes, sir.

\*     \*     \*     \*     \*     \*

"Q. How fast were you going?

"A. About twenty miles an hour.

"Q. When did you first see Mrs. Thomas?

"A. I didn't see her until she was out in the street.

"Q. What did you do when you saw her?

"A. I put on the brakes.

"Q. Do you know whether your brakes worked?

"A. Yes, sir.

"Q. Your brakes worked?

"A. Yes, sir; they worked.

"Q. What else did you do?

"A. I turned to avoid the accident and to run around her.

"Q. Which way did you turn?

"A. To the right.

"Q. You turned to the right?

"A. Yes, sir. She kept right on in front of my car.

"Q. What?

"A. She ran right in front.

"Q. In front of your car?

"A. Yes, sir.

"Q. Did your car go upon the curb?

"A. Yes, sir; the right wheels.

"Q. The right wheels went upon the neutral ground?

"A. Yes, sir.

"Q. Where was Mrs. Thomas, with reference to the west curb of north Washington street, at the time she was struck by your truck?

"A. She was about four feet from the curb.

"Q. Which way from the curb—towards the street or towards her house?

"A. Towards her house.

"Q. Was she up on the neutral ground?
"A. No, sir.
"Q. She was not on the neutral ground?
"A. No, sir.
"Q. You mean by that, that she was in the street?
"A. Yes, sir.

\* \* \* \* \* \*

"Q. How far did your car go after striking Mrs. Thomas, and before it stopped?
"A. I guess fifty feet.

\* \* \* \* \* \*

"Q. When Mrs. Thomas was crossing Washington street going towards her residence, was she running or walking?
"A. She was running.
"Q. Fast or slow.
"A. Fast.
"Q. How close were you to the west edge of Washington street when you first saw Mrs. Thomas? How close were you to the curb?
"A. I guess I was six feet from the curb.
"Q. Six feet from the curb when you first saw her? Is that right?
"A. Yes.
"Q. What did you do when you first saw her?
"A. Skidded my brakes.
"Q. Did you skid your brakes in the street or on the neutral ground?
"A. I skidded my brakes in the street.
"Q. And then ran upon the neutral ground?
"A. Yes, sir.

\* \* \* \* \* \*

"Q. And two right hand wheels got up on the neutral ground?
"A. Yes, sir.
"Q. And the two left wheels did not?
"A. No, sir.

\* \* \* \* \* \*

"Q. Where was Mrs. Thomas when you hit her with this truck, in the street or on the parkway?
"A. She was in the street.
"Q. How far was she from the curb?
"A. She was five or six feet from the curb.
"Q. Now, when you saw Mrs. Thomas coming from behind that car, you tried to dodge her, didn't you?
"A. Yes, sir.
"Q. You turned to the right, to try to dodge her?

"A. Yes.
"Q. If you had cut your car sharply to the east and kept on, would you have hit anything?
"A. I would have hit her.
"Q. You cut your car sharply to the right and hit her?
"A. I just couldn't avoid it."

George Gilmore, a witness for defendant, testified:

"Q. Just tell what you know about the accident.
"A. Well, it is very little I know. I was there at the present time. There was an ox team going north, and at the time I was looking at the team, and when the car came by I noticed that; it attracted my attention; it looked like it was running at a rate of about twenty or twenty-five miles; and when the car hit Mrs. Thomas, I wasn't looking at it. I was looking at the team, and Henry said 'look yonder.' I looked around in time to see her just before she made the last turn, but I didn't see the car hit her.
"Q. Where was she when you saw her, was she in the street or on that neutral ground?
"A. Well, she was in about two feet of the curb.
"Q. You mean—in which direction was she from the curb?
"A. Well, she was east of the curb about two feet.
"Q. You mean by that, she was in the street altogether at the time you saw her?
"A. Yes, sir; she was in the street; east.

\* \* \* \* \* \*

"Q. Did you see her being rolled down that embankment, rolling over and over?
"A. I saw her; it looked to me like make about one turn after this fellow called my attention.
"Q. Making about one roll?
"A. She made about one roll and he ran over to her and so did I, but another fellow beat me there, to help pick her up.

\* \* \* \* \* \*

"Q. You say Mrs. Thomas was lying in the street?
"A. Yes, sir; about two feet from the curb.
"Q. Were her feet to the curb or her head to the curb?
"A. Well, the best I can remember she

was lengthwise to the curb, with her head south.

"Q. Her body about two feet from the curb?

"A. Yes, sir."

Robert Carter, a witness for defendant, testified:

"Q. Suppose you tell the court what you know about what occurred at that time?

"A. I was in it when it hit Mrs. Thomas.

"Q. Where was Mrs. Thomas at the time she was struck?

"A. She was just a short distance from the curbing.

"Q. A short distance from the curbing, east or west?

"A. The side she lives on; a short distance from it.

"Q. What was she doing just before she was struck?

"A. Going across the street.

"Q. Was she running or walking?

"A. I don't know that you would exactly say she was running, she was trotting; it seemed like she was hurrying to get across the street.

* * * * * *

"Q. Just before Mrs. Thomas was struck, what did the driver of that truck do?

"A. The boy who was driving?

"Q. Yes.

"A. He tried to stop.

"Q. Which direction did he turn his car?

"A. He didn't turn it around.

"Q. Which way did he turn it, right or left?

"A. He turned to the right.

* * * * * *

"Q. Was she in the street at the time she was hit?

"A. Well, the bottom of the curb, would you call that in the street? It was so close I could not say. You could call it in the street or at the bottom of the curb.

"Q. Where was her body?

"A. Lying in the curb.

"Q. In the curb?

"A. Her shoulders and head were in the curb, her feet might have been outside the curb.

"Q. You mean her head and shoulders were across the curb, on the parkway?

"A. No; at the bottom of the curb."

The preponderance of the testimony supports, we think, defendant's contention that Mrs. Thomas was struck while she was in the street, and this contention finds confirmation in the physical fact that she was not run over by the truck. Had she been struck by any part of the truck other than the left front fender she would necessarily have been knocked down in front of the truck, for the reason that the truck was being turned sharply to the right or west and Mrs. Thomas would have fallen to in front or to the west of the truck if she had not been hit by the left front fender, and being hit by the left front fender caused her to fall to the left of the truck or east, in the street.

The testimony of the medical experts who examined Mrs. Thomas' injuries is to the effect that the right side of her right limb was much bruised, and we think that explains how she was knocked into the street east of the truck going south.

Nor do we think the doctrine of the last clear chance has any application in the case. The driver of the truck saw Mrs. Thomas as soon as it was possible for him to have seen her and after seeing her did everything in his power to avoid striking her.

In view of the conflicting testimony we do not think it can be said that the plaintiffs have discharged the burden resting upon them to make out their case with reasonable certainty.

We find no error in the judgment appealed from and accordingly it is affirmed.

ODOM, J., recused.