No. 3555

Second Circuit

———

BASS v. MEANS ET AL.

———

(November 18, 1929.   Opinion and Decree.)
(December 31, 1929.   Rehearing Refused.)

———

Thatcher, Browne, Porteous & Myers, of Shreveport, attorneys for plaintiff, appellant.

Foster, Hall, Smith & Barret, of Shreveport, attorneys for defendants, appellees.

REYNOLDS, J. Plaintiff, Mrs. Barnette C. Bass, by this action sought judgment against defendants, Mrs. J. T. Means, and her daughter, Miss Clifford Mary Means, a minor, for damages, for personal injuries sustained by her in being struck by an automobile owned by the former and operated by the latter; it being alleged that the daughter was operating the automobile under the supervision and direction of the mother and it was negligently operated and that the negligence was the sole cause of the accident. Defendants denied negligence and alleged that plaintiff was negligent and that her negligence was the sole cause of the accident.

On these issues the case was tried and there was judgment in favor of defendants and against plaintiff and the plaintiff appealed.

## OPINION

The accident happened in the city of Shreveport, Louisiana, where Texas street crosses McNeil street, at about thirty minutes after one o'clock in the afternoon of April 2, 1927. Texas street runs approximately east and west and McNeil street approximately north and south. There is a traffic signal at the intersection with shifting lights of red, green and yellow. Plaintiff and two companions, Mr. C. L. Green and Miss Beulah McKay, arm in arm, she being on the left hand side, Mr. Green in the center and Miss McKay on his right hand side, were in the act of crossing McNeil street from the northeast corner to the northwest corner of the intersection, and defendants' car, coming west on the north side of Texas street, was turning into McNeil street to go north, and struck plaintiff's left foot and leg as far as the knee.

The view that we take of the case renders it unnecessary for us to consider the nature or extent of the injuries.

Plaintiff's version of how the accident happened is as follows:

"Q. Just tell the court what happened?

"A. Well, as I stepped from the curb I turned my head to the left and glanced toward Texas street, and not seeing anything at all approaching, I started across the street, when I heard Miss McKay exclaim, and just as she spoke the car struck my foot and threw me not all the way to the pavement, because Mr. Green, who had me by the left elbow, slipped his hand under me, as I was falling, and partly supported my body.

* * *

"Q. Now the companions that were with you, did they start across the street at the same time that you did?

"A. Yes, sir.

"Q. Were there others crossing the street at the same time, Mrs. Bass?

"A. Yes, sir; there were quite a few people in front of me, and I was conscious of people being right along with me.

"Q. Mrs. Bass, what was the relative position of yourself with your companions, as you were going across?

"A. I was next to Texas street and Mr. Green was between Miss McKay and myself; in fact, he had me by the elbow as we crossed.

"Q. At the time that you were crossing McNeil street, at the intersection of Texas street, there were a good many people crossing there with you, were there not?

"A. There were some in front of me and some along by the side of me and some behind me.

\* \* \*

"Q. I asked you, Mrs. Bass, if you did not state, in the presence of Mrs. Means and these other parties that were there with her, that it was your fault? If you did not state that to those people when you got in the car?

"A. No, sir, because I was going on the green light.

"Q. They were going on the green light too.

"A. They were making a right turn, or at least there at the corner, and I had the right to cross the street; I didn't know she was coming.

\* \* \*

"Q. I will ask you again if you did not state in the car, also before you got in the car, in substance as follows: 'I know it was my fault; I was not looking; merely following the crowd.'

"A. Well, I think that if any question came up, at first it was as to whether I saw the car before it struck me, and my statement was that after I stepped from the curb that I did not look and was well on the street and that I did not look to the left, I was following the crowd.

"Q. You did state that?

"A. Yes, sir; because I looked when I stepped off the curb and there was not anything at all to stop me and I went on with the crowd."

Miss Beulah McKay testified that:

"Q. What were the relative positions of you three as you went across the street?

"A. Mrs. Bass was on the left, Mr. Green was in the center and I was on the right.

"Q. State, now, what occurred?

"A. We were walking abreast, almost; Mr. Green might have been a little to the rear; he held our arms, Mrs. Bass' right arm and my left arm, and we started across together on the signal, when the car hit her.

\* \* \*

"Q|. How far was the car from you at the time that you saw it first?

"A. It was just about to strike Mrs. Bass when I saw it approaching.

"Q. How many feet did you say that it was?

"A. I would not say; but it was right on her when I saw it; it was not any distance at all.

"Q. And you called to her?

"A. Yes, sir, as soon as I saw the car, but as I did the car struck her.

\* \* \*

"Q. In what direction was the wheel flexed, as well as you remember?

"A. It seems to me it was flexed this way (witness illustrating) towards Mrs. Bass."

\* \* \*

Miss Clifford Mary Means testified that she was driving the car that struck the plaintiff, and that:

"Q. Will you state where you were coming from just before this accident occurred?

"A. We were going up Texas street into McNeil street and had stopped there for the red light a few seconds and waited for the green light to flash on, and I put the car in low gear and started forward to make a right hand turn there into McNeil street, and just as I started to turn I saw the people crossing the street and they all stopped, except this pedestrian and she stepped right in front of the right wheel of my car.

"Q. There was quite a crowd pass-ing?

"A. Yes, sir.

"Q. Now, the rest of the people on each side of the car had stopped?

"A. Yes, sir.

"Q. How did your car hit her?

"A. I was on the left, and she just stepped in front of it.

"Q. Did it throw her down?

"A. Nō. sir.

"Q. Did your car run up on her and stop.

"A. No, sir; I stopped instantly.

* * *

"Q. Did you see her when she first stepped into the car?

"A. Yes, sir; just as she went to step in front of the car I pushed on the brakes.

"Q. She stepped into the car?

"A. Yes, sir.

"Q. Did you hear her say, after she got in the car, that she was merely following the crowd and that it was her fault?

"A. Yes, sir.

"Q. That it was her fault?

"A. Yes, sir.

"Q. Did you hear her say anything else?

"A. Mother asked her if she wanted us to take her to the sanitarium, and she said that it was not necessary; to just take her around to the Independent Drug Store, where her husband worked.

"Q. Before you turned to make the turn, you looked toward the curb there at McNeil street to see where the people were?

"A. I was watching the people as I was turning, to see that I could get by, and I noticed that they stopped, all except this person.

"Q. I believe that you stated, in re-ply to Mr. Foster's question, that the people stopped as you turned?

"A. Yes, sir.

"Q. In other words, everything stopped, when you went to turn?

"A. Yes, sir.

"Q. Those going toward your left, towards Baird's store, stopped too?

"A. Yes, sir; all except this woman.

* * *

"Q. That collision, the impact, the blow, was not sufficient to do any more than to brush the calf of the leg, is that what you say?

"A. It did not even tear the hose; she had on flesh colored hose and they were all right."

C. L. Green's version of the acci-dent was as follows:

"We stepped down from the curb to-gether there, possibly I was in front of Mrs. Bass or along with her with my left hand—I was in the middle when we started across and Mrs. Bass was on my left, on the outside of the walk, and Miss McKay was on the right hand side, and I had each one of them by the elbow and we had gone a little more than one third across the street and turned the middle, and Miss McKay, I don't remember which one, made an exclamation and I stepped back and a car turned around and the next thing it had Mrs. Bass' foot under the car, and I had my arms under her shoulder and caught her elbows and kind of eased her down on her back, because the car had rolled up on her foot and had stopped; the car rolled up her leg to her knee and stopped and then rolled off; I think that it rolled off down the incline there; it seemed like that; and then I picked her up and asked her if she was hurt and she grabbed me by the lapel of the coat and buried her face in my breast and said she didn't think she was; she didn't cry out, and I asked her if she was hurt and she said she didn't know if she was hurt or not; and then Mrs. Means, one of the ladies that were in the car, stepped up to us and asked Mrs. Bass if she wanted to be taken to the hospital and she said no, that she would much rather be taken around to the Independent Drug Store where her husband worked.

* * *

"Q. You didn't see the car coming?

"A. No, sir, I didn't see it coming until it was on Mrs. Bass' foot.

"Q. Did you hear it?

"A. No, sir; the first thing that I heard was Miss McKay's exclamation."

Mrs. Maude May Thurmond testified she was riding in defendant's car at the time of the accident and her testimony corrob-

orates that of Miss Clifford Mary Means. She was asked:

"Q. Did you hear her (Mrs. Barnette C. Bass) make any statement either outside there or after she got in the car?

"A. Not on the outside, but heard her after she got into the car.

"Q. What did she say?

"A. I heard her say that she did not think it was our fault; that it was unavoidable; that she was simply following the crowd."

Miss Catharine Thurmond testified that she was in the car with the defendants at the time of the accident and her testimony corroborates that of Miss Clifford Mary Means as to the manner in which the accident happened. And she was asked:

"Q. Did you hear her (Mrs. Barnette C. Bass) say anything, after the accident, as to how it happened?

"A. When she got in the car, I heard her say that she was merely following the crowd—was not looking."

Mrs. J. T. Means, one of the defendants and mother of her co-defendant Miss Clifford Mary Means, testified that she was in the car with her daughter at the time of the accident and corroborates her daughter's version of how it happened. She was asked:

"Q. Tell the court what happened?

"A. I got out immediately and went to her (Mrs. Barnette C. Bass) and examined her to see if she had been injured in any way at all, and I was as sorry as could be; she told us that she didn't want to be taken to the sanitarium, because when I asked her she said no, that it was not necessary, that she was not hurt, and I kept on telling her that I was sorry that the accident had occurred, and she said that she was not hurt and that the accident was unavoidable, that she was not watching where she was going, and that she was merely following the crowd, and she said that anyway she had always thought that pedestrians had the right of way.

"Q. She said that?

"A. Yes, sir; she said it a second time; she said it right there, then, and then another time, after she had gotten in our car.

"Q. What was it she said after she had gotten in the car?

"A. I asked Mrs. Bass if she wanted to be taken to the sanitarium, and she said: 'No, I am all right; I was not watching where I was going, and I was merely following the crowd, and anyway I thought the pedestrians always had the right of way.'"

Counsel for plaintiff and counsel for defendants have presented us with interesting briefs in which the law and the evidence is ably discussed; but we do not find it necessary to review all the evidence or all the law, for the reason that the case turns upon issues of fact, namely, whether defendants were guilty of negligence, and was their negligence the proximate cause of the accident, and, if so, whether plaintiff also was guilty of negligence, and, if so, whether her negligence contributed to cause the accident.

The testimony of the occupants of defendants' automobile is positive to the effect that on reaching McNeil street the red signal light was showing and the automobile was stopped and that on the return of the green signal the automobile moved slowly and cautiously into McNeil street.

And the testimony clearly shows that plaintiff, walking across McNeil street, from its east side to its west side, arm in arm with two companions, looking neither to the right nor left, stepped in the way of the right front wheel of defendant's car. And the testimony to this effect is corroborated by the physical fact that it was the wheel and not the bumper or fender of defendants' car that struck plaintiff. It is also corroborated by the fact that Miss McKay, though the farthest

away from the car of the three was the first to see and hear it and that plaintiff, though nearest to it, was not aware of its presence until warned of it by Miss McKay.

"The rights of a pedestrian and an automobile driver at street intersection are equal and reciprocal, and each must use such caution, and prudence as the situation demands." Roder vs. Legendre, 147 La. 295, 84 So. 787.

"Whether driver of automobile which struck pedestrian was negligent depends on whether he did what a reasonably prudent man would have done under the circumstances, or omitted to do what a reasonably cautious man would have done." Ibid.

The green signal being on, the rights of plaintiff and the driver of the automobile at the crossing were equal and reciprocal; and the evidence shows that defendants' car was being operated prudently and cautiously.

Not only were defendants not guilty of negligence, but the evidence affirmatively shows that plaintiff was guilty of negligence, and that her negligence was the cause of the accident. That she was not using caution appears from the fact that, though nearest the automobile, her attention had to be called to its presence by one of her companions, farther from it than she was.

"Where a chauffeur saw plaintiff and her companions, and had his machine under control, and would have avoided striking plaintiff if it had been possible to do so, and she had placed herself in danger because of her contributory negligence, defendant was not liable for the resulting injury." Braud vs. Taxa Cab Co., 129 La. 781, 56 So. 885. See, also, Collier vs. Frank Varino & Co., 153 La. 636, 96 So. 500; Itzkovitch vs. Schorling, 155 La. 423, 99 So. 353.

Plaintiff contends that she had the right of way over the crossing. This contention is not in accord with the law. Roder vs. Legendre, supra.

But, even if she had had the right of way, this would not have relieved her of the duty of looking to see if it was safe for her to continue attempting to cross the street after beginning to do so. Vance vs. Poree, 5 La. App. 109.

In Johnson vs. Item Co., Limited, 10 La. App. 671, 121 So. 369, the court said:

"Even when one has the right of way, he is not relieved from the necessity of looking into the direction from which others may be expected to approach, and where such care would, as in the case here, have prevented the accident, he who fails to look cannot recover, even though the other party was grossly at fault."

Plaintiff also contends that defendants were negligent in not blowing a horn before turning into McNeil street. If this be conceded, it would not entitle plaintiff to recover in view of the fact that she herself was negligent in failing to look in the direction from which automobiles might be expected to come and in view of the further fact that, had she done so, the accident would not have happened. But, as stated above, it is our opinion that defendants were not at all at fault. The automobile approached and was turning into McNeil street at a slow speed in full view of many pedestrians also crossing McNeil street at the same time plaintiff and her companions were. These other pedestrians halted to let defendants' automobile pass, but plaintiff, without looking to her right or left, kept on moving and stepped in front of the wheel of defendants' car.

Several of defendants' witnesses testified that immediately after the accident plaintiff conceded that it was caused solely

by her own fault in following the crowd going in the direction she was going instead of looking in the direction from which automobiles might be expected to come, and, when asked if she had made such a declaration, plaintiff virtually admitted she had, for she said:

"Well, I think, that if any question came up, at first, it was as to whether I saw the car before it struck me, and my statement was that after I stepped from the curb that I did not look and was well on the street and that I did not look to the left, I was following the crowd."

Lastly plaintiff urges that defendants are liable under the doctrine of the last clear chance. But we do not think defendants had the last clear chance to avoid the accident, for the reason that plaintiff stepped in front of defendants' car when it was so close to her it could not be stopped before striking her. Plaintiff's negligence continued down to the instant of the accident. The last clear chance doctrine has no application to a case like this.

"The last chance doctrine had no application to a railroad crossing accident where the negligence of both parties was concurrent and continuous down to the moment of the accident." Young vs. La. Western Ry. Co., 153 La. 129, 95 So. 511.

There is some conflict between the testimony given by the plaintiff's witnesses and that given by defendants' witnesses; but the trial judge, who heard and saw the witnesses testify, accepted defendants' witnesses' version of the accident rather than that of plaintiff's witnesses as correct, and we do also.

Under the evidence and the law, the judgment appealed from is correct, and it is affirmed.