No. 4214

Second Circuit

(Second Division)

---

### CARTER ET UX. v. CARRAWAY

---

(December 9, 1931. Opinion and Decree.)

---

250

Irion & Switzer, of Shreveport, attorneys for plaintiffs, appellants.

Thatcher, Browne, Porteous & Myers, of Shreveport, attorneys for defendant, appellee.

DREW, J. Plaintiffs instituted this suit for damages alleged to have been sustained by them when their minor son was injured as the result of being struck by an automobile driven by the defendant, and, as parents and natural tutors, for damages for injuries sustained by their minor child. The amount sued for is $189 for themselves for medical expenses, etc., and $10,000 on behalf of their minor child.

They alleged that at about 6 o'clock in the afternoon on July 22, 1930, their minor child, Hightower Carter, was crossing North Market street in the city of Shreveport at about the middle of the block; that defendant, driving his automobile at a rapid rate of speed, bore down upon him, striking and injuring him. They alleged with specificness the injuries sustained by their minor son and the acts of negligence of defendant alleged are as follows:

"That the movement of the said automobile was so sudden and unexpected that the said Hightower, although exercising due diligence, care and skill, was unable to avoid or prevent the accident;

"That the accident was due solely to the fault, negligence and lack of skill of defendant;

"That the defendant was operating his car in a careless, unsafe, negligent and reckless manner, and was not keeping a proper lookout, all in violation of the laws of the State of Louisiana and the ordinances of the city of Shreveport; and

"That defendant's excessive speed and other acts set forth above, were the proximate cause of the accident and that High-tower Carter contributed in no way to same."

They further alleged in the alternative, should the court find Hightower Carter guilty of contributory negligence, that defendant had the last clear chance to avoid the accident. In an amended petition they alleged that Hightower Carter was crossing the street on foot from the west to the east side, and that he had almost crossed the street when struck by defendant's automobile.

Defendant in answer denied the principal allegations of plaintiff's petition. Further answering, he alleged that he was driving along Market street in a lawful manner, at a moderate rate of speed on the proper side of the road, and keeping a lookout ahead. That the boy, Hightower Carter, suddenly darted out from the west side of the street from behind an oncoming car and ran directly in front of his car, without any warning or notice to enable him to stop his automobile. That he had no means of knowing that the boy was going to dash across the street in front of his car in the middle of the block. He denied any negligence on his part and alleged that if the boy was injured to any extent, which he denied, it was due to the negligence of the boy. He pleaded contributory negligence on the part of Hightower Carter and on the part of plaintiffs for sending him across the street in the middle of the block, without keeping a proper watch over him. He denied he had the last clear chance to avoid the accident.

The lower court rendered judgment for defendant and rejected the demands of plaintiffs. From this judgment plaintiffs have appealed.

A careful reading of the pleadings reveals the fact that the negligence charged

to defendant is excessive speeding and failing to keep a proper lookout. The defense is that the accident was unavoidable and, in the alternative, contributory negligence on the part of Hightower Carter and his parents.

The alleged negligence of failing to keep a proper lookout falls by the very testimony of plaintiffs' witnesses who testified that defendant's car skidded from a point south of Simms street to the scene of the accident, which is more than one hundred feet, and also by the testimony of one other of plaintiffs' witnesses, who says he measured the skid marks and they were shown on the pavement to be about 45 feet. If we should accept this testimony, we would be convinced that defendant saw the boy as soon as he entered the road and as soon as it was possible for him to have seen him. On the other hand, defendant testified that he was keeping a proper lookout; therefore, the charge of negligence by failing to keep a proper lookout passes from the case.

The remaining charge is that defendant was traveling at an excessive rate of speed. The ordinances of the city of Shreveport fixing the speed limit on North Market street was not offered in evidence, and we do not know what it is. The only testimony offered by plaintiffs as to the speed of defendant's car is that of the mother of the boy, Mrs. Carter, and a witness named Bradley. Mrs. Carter testified that defendant was coming very fast and did not attempt to fix in miles per hour the speed of the car. The witness Bradley testified that defendant was traveling at about 35 or 40 miles per hour. Defendant testified that he was traveling about 15 miles per hour. Mrs. Carter testified that she saw the car before the accident, but we think it improbable, for when she came out after the accident had happened she told defendant that she was in the house at work and heard the noise of the brakes and knew somebody was about to have a wreck. When she got to the door, the first thing she saw was the loaf of bread for which she had sent the boy. However, if she did see the car before the accident, her testimony alone is not sufficient to hold that defendant was speeding.

The testimony of the witness Bradley is so conflicting and so clearly impeached in so many instances that the court would not be justified in rendering judgment thereon. He fixes the time of the accident in the morning, when in fact it happened near 6 o'clock in the afternoon. He places himself on the gallery of a house on another street, some distance away, and it is clearly shown that at the time of the accident, due to a building that was standing and has since been demolished, it would have been impossible for him to see the car before the accident. He also places himself at the scene of the accident immediately afterwards, yet no other witness saw him there. He saw Mrs. Carter pick up her boy and carry him in the house, when in fact the child walked into the house unassisted. Mr. Bradley is possibly confusing this accident with some other accident he has witnessed, but certainly he did not see this one.

The preponderance of testimony is that defendant's car skidded about six or seven feet, which corroborates defendant's testimony that he was traveling about 15 miles per hour. He is further corroborated by the fact that he did not run over the child, as the bumper of the car struck the boy and the car stopped before passing over him. After the accident, the child was

still in front of the car. We are convinced that the testimony fails to prove the charge of speeding.

The defendant, a merchant of Ida, Louisiana, a village located in the northern part of Caddo parish, was returning to his home, and, on reaching that part of the city of Shreveport, which was formerly the village of Agurs, the accident occurred. The street or road at that point and continuing on north, is composed of a slab of concrete or asphalt in the center, about wide enough for two cars to pass, and the remainder of the street or road on each side is of dirt and gravel. Necessarily, when one is traveling on the hard surfaced part of the road, as was defendant, going north, the left wheel of the car would be near the center of the road. When defendant reached about the middle of the six hundred block in the former village of Agurs, plaintiffs' son, seven years and nine months of age, suddenly darted out into the road, running across from the west side to his home on the east side. Defendant, on seeing the child, put on his brakes and cut his car as far as possible to the right-hand side, in an attempt to miss him. The child was struck near the right-hand side of the road and knocked down.

The accident, we think, was unavoidable. Defendant was not guilty of any negligence and acted upon seeing the child run in front of his car, as any prudent man would have done under the circumstances.

Huddy, Cyclopedia of Automobile Law (9th Ed.) vols. 5, 6, sec. 73, p. 113; Huddy, Cyclopedia of Automobile Law (9th Ed.) vols. 5, 6, sec. 43, p. 64; Bass v. Means, 12 La. App. 260, 124 So. 553; Roder v. Legendre et al., 147 La. 295, 84 So. 787; Neville v. Postal Telegraph Cable Co., 13 La. App. 76, 126 So. 720.

It is urged by plaintiff that a Ford car driven 15 miles per hour can be stopped in two feet. That may be true, but not when the driver was not expecting to have to stop; and the fact that defendant stopped within six or seven feet, we think, shows that he was maintaining a proper lookout and stopped as soon as possible under the circumstances.

It is also urged that defendant had the last clear chance to avoid the accident and that he should have gone to the left instead of to the right, thereby missing the child. Defendant contends he did not turn to the left for the reason that another car was coming and was ready to pass him at the time. That is a very good reason, but if no car was coming towards him from the north, we think he did and acted as any reasonable, prudent man would have done in the emergency and under the circumstances.

"There is no opportunity for the application of the last clear chance doctrine in a case where the injured person passed in front of a machine so suddenly that the collision could not have been avoided had the driver exercised reasonable care." Huddy, Cyclopedia of Automobile Law (9th Ed.) vols. 5, 6, sec. 125, p. 210, citing the following cases: Thomas v. Natural Gas Producing Co., 9 La. App. 680, 121 So. 649; Roder v. Legendre, supra; Buckley v. Featherstone Garage, Inc., 11 La. App. 564, 123 So. 446; Bass v. Means, supra.

The defendant was traveling in a lawful manner at the time of the accident. He was guilty of no negligence and the accident, in so far as he was concerned, was entirely unavoidable and he is not liable.

The judgment of the lower court is correct, and it is therefore affirmed, with all costs.