### HARPER et al. v. SHREVEPORT ICE CREAM FACTORY, Inc., et al.
### No. 5067.

Court of Appeal of Louisiana.
Second Circuit.
June 29, 1935.

Irion & Switzer and Malcolm E. Lafargue, all of Shreveport, for appellants.

Blanchard, Goldstein, Walker & O'Quin, of Shreveport, for appellees.

MILLS, Judge.

Carrie Harper and Lula Jones, adult children of Betty Scott King, a negro woman between sixty and seventy years of age, bring this action against Phil Drais, Jr., receiver for the Shreveport Ice Cream Factory; its insurer, Fidelity & Casualty Company of New York; and its driver, B. L. Clemens, each demanding $12,000 damages for the death of their mother caused by being struck by an automobile belonging to the first-named defendant and being operated in the course of his employment by Clemens.

The accident occurred just after dark on the misty, rainy night of December 14, 1933, on Texas avenue in the city of Shreveport. This avenue, running approximately north and south, is a much traveled main thoroughfare upon which the speed limit is fixed by ordinance at 23 miles per hour. Deceased was attempting to cross diagonally northward from the west side of Texas avenue to where it is intersected on the east by the 24-foot paved street known as Wilson alley, which leads off into negro quarters. This street does not continue across as such, being an ordinary 20-foot unpaved alley on the other side of Texas avenue. It is midway of the block between Christian street and Grand avenue.

Texas avenue is 54 feet wide, paved, and traversed by a double street car track, leaving room on each side for two lanes of traffic, actually reduced to one by cars usually parked along the curb.

On the night of the accident Clemens was driving his employer's coupé on his right-hand side of the street, within 3 feet of the car track, north towards Wilson alley and the business section of town. Deceased had progressed in her crossing just beyond the car tracks when she was struck by, or ran into, the left side of defendant's car.

Plaintiffs' averments of negligence are: Excessive speed, lack of control, failure to sound the horn, insufficient brakes; and, in the alternative, the doctrine of last clear chance.

The answer admits the business relationship of the parties and the occurrence, but denies any negligence on the part of the driver, pleading in the alternative that deceased was contributorily negligent in running heedlessly, and without looking, into the side of the car.

The trial, conducted without a jury, resulted in a judgment rejecting plaintiffs' demands, from which they have appealed.

It is proven that, if not running, the woman was at least going as fast as her age would permit. That she never saw defendant's car, and collided with its left rear fender. She had passed over the zone of danger coming from her left and should have been on the lookout for cars coming from her right. There was nothing to obstruct her view of the car approaching with its lights burning. She did not see the car because she did not look. Had she looked and stopped at all, the accident would have been avoided. Clemens did not see Betty until he was almost upon her. He then swerved to the right and nearly succeeded in getting around her. He says that he did not see her sooner because his view of the street to his left was obstructed by the heavy outgoing traffic. Deceased was not directly crossing the intersection, but was coming from a point some 30 or 40 feet south of it. While it is settled that a street coming into but not continuing across another intersects it, we do not think that a motorist is under the same duty to anticipate pedestrians crossing from the clos-

ed side as at complete intersections. In the present case, the situation on his right where the paved street entered Texas avenue, with people standing on the corners, demanded a large part of the driver's attention. It was certainly the duty of deceased, before entering the lane of travel from the south, to have looked in that direction. With the lights of outgoing traffic shining in his eyes, it would have been far easier for her to have seen the car than for its driver to have seen her.

The rights of a pedestrian and an automobile driver at a street intersection are reciprocal. Each must use that caution and prudence that the situation demands. The fact that the deceased did not look and avoid the accident was its proximate cause. Roder v. Legendre, 147 La. 295, 84 So. 787.

"But, even if she had had the right of way, this would not have relieved her of the duty of looking to see if it was safe for her to continue attempting to cross the street after beginning to do so." Bass v. Means et al., 12 La. App. 260, 124 So. 553, 557; Vance v. Poree, 5 La. App. 109.

In Johnson v. Item Co., 10 La. App. 671, 121 So. 369, the court said:

"Even when one has the right of way, he is not relieved from the necessity of looking into the direction from which others may be expected to approach, and where such care would, as is the case here, have prevented the accident, he who fails to look cannot recover, even though the other party was grossly at fault."

Six colored witnesses who were standing about, none of whom are shown to have driven automobiles or to have seen the car any appreciable time before the collision, testify that it was making from 30 to 35 miles per hour. Clemens testifies that he was traveling at a speed of from 20 to 25 miles per hour. The witness best qualified on this point was J. J. Thomas, who for several blocks preceding the accident was driving back of Clemens. He says that one car passed going north, and that he too would have done so had traffic permitted; that both cars were making about 20 miles per hour. It is proven that Clemens stopped within 20 feet of where deceased fell, and it is conceded that she was not carried more than a car length. A witness for plaintiffs, after conducting experiments, testified that a car going 20 miles per hour could stop within 21 feet, 6 inches; 25 miles, within 32 feet; 30 miles, 42 feet. We presume these experiments were made under ideal conditions. For Clemens to have stopped without skidding, on a wet night, within approximately 30 feet, does not indicate excessive speed. Clemens testified that he could have stopped sooner but continued across so as not to block the entrance to Wilson alley. It is conceded that Clemens' brakes were in good order, and apparent that he could not have sounded his horn in time to be effective.

After a careful study of the case, which presents only questions of fact, we are satisfied that defendant has not been proven negligent and that, in any event, deceased was guilty of contributory negligence in failing to keep a lookout which, continuing down to the time of the collision, bars the application of the last clear chance doctrine. Guillory v. Shaddock (La. App.) 158 So. 681.

The judgment appealed from is accordingly affirmed.