135 So.2d 333 (1961)
George WOODARD
v.
John V. BURKES, George A. Caldwell and The Travelers Insurance Company.
No. 5388.
Court of Appeal of Louisiana, First Circuit.
November 20, 1961.
Dodd, Hirsch, Barker, Avant & Wall, Baton Rouge, for appellant.
Taylor, Porter, Brooks, Fuller & Phillips, Tom Phillips, Kantrow, Spaht, West & Kleinpeter, Baton Rouge, for appellees.
*334 Before ELLIS and HERGET, JJ., and MILLER, J. pro tem.
MILLER, Judge pro tem.
This is a damage suit instituted by George Woodard against John V. Burkes, George A. Caldwell, and The Travelers Insurance Company arising out of an intersectional accident in which the plaintiff, George Woodard, was struck and knocked down by a car owned and driven by John V. Burkes, and insured by The Travelers Insurance Company, both made defendants. George A. Caldwell, Burkes' employer, is also made a defendant. John V. Burkes, although made a defendant in this petition, was never served. After trial of the case on its merits, the trial court concluded that plaintiff was barred from recovery because of his contributory negligence. Judgment was rendered in favor of all defendants rejecting plaintiff's demands at his costs. Plaintiff has appealed from that judgment.
There is no serious dispute as to the facts. The accident happened at the intersection of Laurel and Fourth Streets in the City of Baton Rouge. Fourth Street runs north and south and Laurel runs east and west. At about 8:30 on the morning of October 18, 1958 plaintiff, George Woodard, was walking in a westerly direction on the south side of Laurel Street. When he came to the intersection of Laurel and Fourth, he stopped on the southeast corner of the intersection to await a favorable light. Upon receiving a green light he proceeded west across Fourth Street at the regularly marked pedestrian crossing. After having almost completed the crossing and being two or three feet from the west curb of Fourth Street, he spotted Burkes making a right turn off Laurel and heading directly toward him. Plaintiff stepped or lunged forward leading with his right foot in an attempt to reach the curb. He was struck on the inside of the left ankle and fell to the pavement. Burkes, who never saw the plaintiff, heard a commission and brought his car to a stop alongside the west curb of Fourth Street, some twenty-five feet south of the point of impact.
The plaintiff testified that he had left his apartment on Laurel Street and was going for a newspaper. He stopped at the southeast corner of the intersection of Fourth and Laurel and when the green light appeared he started across. He had almost reached the curb on the opposite side when "out of the corner of my eye I saw a car turning in on me and I lunged and I had one foot on the curb, I believe, or just about on the curb * * * and I had everything protected except this left heel and I must have had that in the air and the inside of my left ankle right there, the car hit me there and spun me around and threw me in the street and I struggled to get to the sidewalk and the thing I can remember is holding onto the post and I heard people hollering, `Stop, Stop, Stop' * * *." He stated that at the time he saw Burkes' car he (plaintiff) had reached a point about two or three feet from the west curb of Fourth Street and about one or two feet south of the parallel line of Laurel Street.
Defendant, John V. Burkes, testified that he had left his hotel that morning and was driving north on Third Street on his way to work when he realized he had forgotten a letter he had to mail. At that point, instead of continuing north across Laurel, he turned right off Third onto Laurel traveling east and approaching the intersection of Laurel and Fourth, one block away. He turned right on Fourth "and when I did, well someone hollered out `wait a minute' and when they did I pulled off to the right and stopped and got out." Mr. Burkes told the plaintiff that he was awfully sorry that it happened and that "I didn't see you * * *."
The only other witness to testify as to the accident was a Miss Hattie Lee Griffin who was called by the plaintiff. Miss Griffin was crossing Fourth Street from the east curb to the west curb in the vicinity of but an unspecified distance from the point of impact. She had not observed the plaintiff nor *335 Burkes' car prior to the impact. "I didn't see the actual hit. As I saw itI heard the man and I heard the commotion and Mr. Woodard was trying to pull himself up by a sign post, I guess is what it was on the corner there." She stated that Burkes' car was brought to a stop alongside the west curb of Fourth Street between her office and the corner of Laurel and Fourth Street. The distance between her office and the corner was about twenty-five feet according to Miss Griffin. She talked to the plaintiff after the accident and he showed her the bruise on his leg near the ankle.
The trial judge, in a written opinion, concluded that "the negligence of each, Burkes and the plaintiff, is concurrent, extending and continuing right up to the second of the accident." He found that if the plaintiff did make a lunge toward the curb he did it too late, and that he was too late because he did not see the car in time. He found that catching only a glimpse of the car was definitely not in the exercise of due care, and that if plaintiff had been paying attention he would have seen the approaching car in time to get out of the way. "His failure in that regard was negligence continuing to the second of the impact." The trial judge found that the plaintiff made no attempt to avoid the accident after he saw the car, and further that it was negligence for plaintiff to get himself in that predicament.
We cannot agree with the conclusion and reasoning of the learned trial judge in his finding the plaintiff guilty of negligence. Plaintiff commenced his crossing of Fourth Street at a regularly marked intersection after having received a favorable green light. He had almost completed the crossing and was only a step from the curb when he spotted Burkes' car turning in on him. Apparently the trial judge felt that plaintiff should have seen Burkes as he proceeded east on Laurel, but even if we assume plaintiff should have made this observation, how could he know Burkes intended to turn right in the absence of a signal? There is nothing in this record showing that Burkes signalled a right turn. In the absence of such a signal, plaintiff would have every reason to believe that Burkes intended to cross Fourth Street and continue east down Laurel instead of turning right into plaintiff's path.
Plaintiff is charged with negligence for his lack of agility. It is urged that the plaintiff was in a better position to take quick evasive action, and he should have done so by taking one or two long steps to place himself in a position of absolute safety on the curb. To saddle the plaintiff with this burden would be to say that the plaintiff is under an obligation to protect defendant against liability for the consequences of defendant's own negligence. Clearly the plaintiff is under no such obligation. Plaintiff's lack of dexterity, if that be shown, availeth the defendant naught.
The sole proximate cause of this accident was the negligence of Burkes in failing to maintain a proper lookout and failing to see what he should have seenthe plaintiff walking across a regularly marked pedestrian crossing in plain view and with a favorable traffic signal.
The defense likens the instant case to the facts found in Webb v. Baton Rouge Bus Co., Inc. (1st App.1943) 15 So.2d 646, and Bass v. Means et al. (2nd App.1929) 12 La. App. 260, 124 So. 553.
In Webb v. Baton Rouge Bus Co. the plaintiff was struck by a bus at the intersection of Church and Florida Streets in the City of Baton Rouge. Church Street runs north and south, and Florida Street runs east and west. The bus was headed west on Florida and had stopped preparatory to making a left turn so as to head south on Church Street. Plaintiff was standing on the southwest corner of the intersection and was seen there by the bus driver before he began his left turn. Plaintiff stepped into the path of the bus and was struck only three to four feet from the curb. The court held that the accident was due solely to the negligence *336 of the plaintiff in stepping blindly from a position of safety into the path of the bus.
In Bass v. Means et al., the plaintiff was struck by a car at the intersection of Texas and McNeil Streets in the City of Shreveport. McNeil Street runs north and south and Texas Street runs east and west. Plaintiff, moving west, was crossing McNeil Street from the northeast to the northwest corner. The defendant was driving west on Texas Street and both plaintiff and defendant had stopped for a red traffic light. When the light turned green, plaintiff stepped from the curb into the path of defendant's right turning automobile and was struck. The court again found that the sole cause of the accident was plaintiff's act of negligence in stepping from the curb in front of defendant's car when it was so close that it could not be stopped before striking her.
The cases of Webb v. Baton Rouge Bus Co., Inc., supra, and Bass v. Means et al., supra, are not applicable to the instant case and are clearly distinguishable on their facts. In both situations the plaintiff had stepped from a position of safety directly into the path of the vehicle only a few feet from the curb from which the pedestrian had just departed. In both cases the court found negligence solely on the part of the plaintiff.
The case of Mahne v. Steele (Or. App.1947) 32 So.2d 761 is cited by the plaintiff and represents a factual situation similar to that in the instant case. The accident occurred at the intersection of St. Joseph Street and Camp Street in the City of New Orleans. Plaintiff was walking on the sidewalk adjacent to Camp Street. She started to cross St. Joseph on a favorable green light and when she had nearly completed her crossing, she was run over by defendant who had been traveling in the opposite direction on Camp Street, and was making a right turn into St. Joseph. In holding for the plaintiff the court said that the automobile driver, before turning into an intersection had a duty to keep a sharp lookout for pedestrians so as to avoid striking them. The court cited the well recognized rule of Jackson v. Cook, 189 La. 860, 181 So. 195, 197 as follows: "* * * that the duty of those in charge of motor cars and engines to look ahead and observe never ceases; that what they can see they must see and in legal contemplation they do see; that their failure to see what they could have seen by the exercise of due diligence does not absolve them from liability." See also Rottman v. Beverly, 183 La. 947, 165 So. 153. And Maher v. New Orleans Linen Supply Company, Inc. et al. (Orleans App.1949) 41 So.2d 101. The following statement in Mequet v. Algiers Mfg. Co., Ltd., 147 La. 364, 367-368, 84 So. 904, 905 made by the Supreme Court early in the history of automotive traffic applies equally as well today: "* * * But at the points provided for the passage of pedestrians they have the right to assume that the operators of such machines will observe that high degree of care imposed by the circumstances. No other condition is consistent with the common and necessary right to use such avenues of intercourse. The frequent occurrence of collisions and accidents argue most forcefully for a rigid enforcement of all traffic regulations intended to prevent such occurrences. Otherwise, the individual who, through choice of necessity, adopts the original mode of locomotion provided by nature, must `take his life and limb in his own hands.' We do not mean by this that he is to be excused for failing to use his own senses to avoid being injured; but the greater duty and care rests upon those who use these dangerous agencies carrying such great possibilities of harm." See also Prine v. Continental Southern Lines, Inc., Ltd., (La.App.1954), 71 So.2d 716.
It is logical that the motorist, as against the pedestrian, bears the greater burden of careful lookout and extreme caution at locations provided for the passage of pedestrians; for it is the motorist who has the power, because of the dangerous instrument which he controls, to reduce the *337 status of a pedestrian to that of a statistic in a split second. The pedestrian poses no such threat.
Having disposed of the principal question of the plaintiff's negligence and resolving the issue in his favor, it should be mentioned that the learned trial judge found that John V. Burkes, an employee of defendant, George A. Caldwell, was not within the scope of his employment at the time of the accident. We are in agreement with this finding and it should be added that plaintiff did not urge this seriously in his brief and counsel for defendant, The Travelers Insurance Company, does not concern himself with the proposition.
The remaining question is quantum.
Plaintiff testified that the automobile struck the inside of his left ankle and threw him to the pavement. He suffered a bruise in the region of his left ankle and his leg hurt although he said "I didn't notice any particular pain * * * and I didn't think much about it." After a while he began hurting all over. He went to a football game that night and about 2:00 A.M. the following morning he awoke with severe neck pains. On the following Monday he visited his long time friend Dr. B. M. Sewell of Boyce, Louisiana. Dr. Sewell, who did not testify in this case, referred plaintiff to Dr. James F. Halley, orthopedic surgeon of Baton Rouge, who saw him on November 4, 1958.
Called as a witness by plaintiff, Dr. Halley stated that his diagnosis was a "strain of the cervical muscalature and contusions and abrasions of the left foot in the region of the heel cord." He prescribed muscle relaxants, heat and, at a later date, traction. On January 5, 1959 plaintiff complained to Dr. Halley of numbness in the right hand and arm. Dr. Halley took two sets of x-rays and noticed no changes in arthritic spurring between the first and second films. Plaintiff cried on his visits and Dr. Halley suggested a psychiatrist. He felt that the complaints were related to the injury. Dr. Halley referred the plaintiff to Dr. Duane Foreman, neurosurgeon of Baton Rouge.
Dr. Foreman, testifying as a witness for plaintiff, stated that he saw plaintiff twice, first on January 7, 1959 and again on February 9, 1959. Plaintiff complained of numbness and tingling in the right arm and hand. Dr. Foreman reiterated that "* * * and as I have already testified I thought he was having mild symptoms that he was not handling properly emotionally and was exaggerating them, maybe not consciously in a malingering fashion, but certainly in his own mind. I have not seen him for a year, so I don't know what has happened since then. I would have expected him to be well by now." Dr. Foreman also testified that plaintiff had no serious damage to any nerves and he had no atrophy of any of his muscles. In response to questioning under cross examination, Dr. Foreman stated that he didn't know whether there was anything wrong with Mr. Woodard.
Dr. L. F. Magruder was submitted by the plaintiff as an expert in psychiatry, though the court never stated his acceptance as such. He had known the plaintiff for about twenty-five years. He diagnosed the trouble as a psychoneurotic disorder-depressive reaction related directly or indirectly to the accident. He thought the accident had precipitated the condition, which condition he said would interfere with plaintiff's ability to carry out his occupational duties. Dr. Magruder testified that plaintiff's old drinking problem could be a possible cause of his depressive reaction.
Dr. Faheam Cannon, orthopedic surgeon of Monroe was called by plaintiff. Dr. Cannon stated that it was his opinion that plaintiff's old arthritis was aggravated by the injury. He further testified that his findings fluctuated or were inconsistent on each visit. He thought that plaintiff should have gone back to work and that, although he was not a malingerer, he was emotionally disturbed.
*338 Dr. Dean Echols, head of neurosurgery at Ochsner's Clinic in New Orleans, was called by defendants. Dr. Echols saw plaintiff three times, although he conducted only one extensive examination. Dr. Echols found no objective symptoms of neurology in the neck, shoulders or arms, and no change in the x-rays taken over a period of one and a half years. There was no evidence of sensory loss in the fingers. Dr. Echols testified that "* * * this man has a lot of arthritis in his neck, which has been developing for many years; and I cannot say that some of the tingling and so on are not coming from that arthritis. I am merely certain that the injury of October 18, 1958 is not responsible for the tingling and his other complaints." He did not believe that the trauma aggravated the condition because the symptoms would have been present immediately. Dr. Echols stated that his real problem was emotional instability and mental depression and there was no relation between this condition and the accident. His diagnosis was "arthritis of the cervical spine, probable cerebral arteriosclerosis and emotional illness."
Taking all of the medical testimony into consideration, the court finds that plaintiff probably sustained a mild neck sprain or whiplash. The plaintiff is basically, emotionally disturbed and has a tendency to inflate his complaints. He cried for all of the doctors, some of the lawyers and the trial court. Dr. Foreman probably came closest to it when he stated that the plaintiff was not handling his symptoms well emotionally. Accordingly, it is our opinion that plaintiff should be awarded the sum of $2,500 for pain, suffering and temporary disability.
Plaintiff's proof of loss of earnings falls short of the burden he is required to carry. In spite of the fact that plaintiff was a bookkeeper and accountant he furnished no records to substantiate his testimony, which was vague and rambling. There will be no allowance for loss of earnings.
The plaintiff shows medical expenses of $507 which will be allowed.
Accordingly, the judgment of the trial court dismissing plaintiff's suit against defendant, The Travelers Insurance Company, be and the same is hereby reversed, and let there be judgment in favor of plaintiff and against defendant, The Travelers Insurance Company, in the sum of $2,500 for pain, suffering and temporary disability, plus $507 medical expenses, for a total of $3,007, with legal interest from date of judicial demand and all costs. The expert fees of $50 each for Doctors Magruder and Foreman will be taxed as costs. The judgment of the trial court dismissing plaintiff's suit against George A. Caldwell is affirmed.
Affirmed in part; reversed in part, and rendered.