(38 South. 401.)

No. 15,263.

MILLER et al. v. ST. CHARLES ST. R. CO.*

(March 13, 1905.)

### STREET RAILROADS—INJURY TO CHILD ON TRACK—EVIDENCE.

1. A street railway company will not be held responsible for the death of a child 2½ years old which has suddenly and unexpectedly run upon the track 5 to 10 feet ahead of an electric car moving rapidly through a narrow street.

2. In such a case, the fact that the car was not brought to a full stop within as short a distance as the evidence shows it is possible to bring such a car to a full stop is insignificant, in view of the fact that, even if it had been done, the fatal result would not have been avoided.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Thomas C. W. Ellis, Judge.

Action by Alfred Miller and wife against the St. Charles Street Railroad Company. Judgment for defendant, and plaintiffs appeal. Affirmed.

Robert John Maloney and Mark Neuhauser, for appellants. Harry Hinckley Hall, for appellee.

PROVOSTY, J. The jury found for the defendant, and the trial judge refused a new trial, and we have no difficulty in reaching the same conclusion. Plaintiff's 2½ year old child was run over and killed on Royal street, at the intersection of Marigny street, by one of the electric cars of the defendant company going uptown. Royal and Marigny are narrow streets, 29 feet from curb to curb, and 10-foot sidewalks. The distance between the car track and the curb on Royal is 12 feet. The child, just before the accident, had been making mud cakes at the woods side, downtown corner of Royal and Marigny. It was off the sidewalk, somewhere on the line of the prolongation of the Royal street woods

*Rehearing denied April 10, 1905.

side sidewalk, or possibly within the property line, but, if so, very near it. The boy in whose charge it was was within a few feet of it on Marigny street, playing with a dead snake with other boys. Standing between the child and the coming car, and to some extent screening the child, were a large square telegraph post, three awning posts, and a trolley post, and there were two, and possibly more, persons standing on the sidewalk near the corner. The car came at the usual speed, which is pretty fast, and the child suddenly and unexpectedly ran in front of it, 5 to 10 feet ahead of it, and was run over.

We do not think a motorman is obliged to check the speed of his car whenever there are persons on the sidewalk or at the corner, and if a child comes suddenly and unexpectedly from behind, or from among, such persons, and runs upon the track right in front of the car, so that it is impossible to stop the car in time to save it, we do not think the railway company is responsible.

Three of plaintiff's witnesses say the child walked upon the track; but one of them says it ran fast, and so say defendant's witnesses. If the child had walked, we cannot conceive how some one of the persons standing so near would not have saved it.

Plaintiff's principal witness, Mrs. Casey, was on the sidewalk in front of the grocery which stands at the woods side, uptown corner of Royal and Marigny—that is to say, on the same side of Royal as the child—and was walking in the direction of the child and of the coming car. She did not see the car until it was upon the child, and did not see the motorman at all, her attention having been concentrated on the child; but she is positive that the motorman did not see the child until after it was on the fender, when his attention was attracted by her own exclamation. On the other hand, plaintiff's next principal witness (we say "next prin-

cipal witness," because the others were youths who were playing with the dead snake), Louque Petrovich, was opening oysters inside of his shop which stands at the riverside, downtown corner. Through the door he saw the car pass, and the motorman was then screwing the brake to stop the car. At that moment there intervened between the car and the child, first, the three or four feet between the door, through which the witness looked, and the property line; second, the 10-foot downtown sidewalk of Marigny street; third, the distance, whatever it was, between the downtown curb of Marigny street and the point where the car actually came in contact with the child. Mrs. Casey's statement as to the motorman's not having seen the child until it was on the fender is therefore contradicted by Petrovich.

From the uncertainty as to the location of the child just before the accident, and from the contradiction as to whether it walked or ran towards the track, and from the fact that persons so near made no effort to save it, we suspect very strongly that none of the witnesses observed the child until it had run into the peril, and that its movement was so sudden that there was no opportunity to attempt to save it.

The car ran 69 feet after the collision, and the answers of the motorman would go to show that he is either a very stupid or very ignorant man. But the court is satisfied that under the circumstances the best of motormen could not have saved the child; hence between any deficiency of the motorman and the fatal result there is no causal connection.

In order to show that the car was going at extraordinary speed, plaintiff's learned counsel, who has presented this case very ably, makes an ingenious computation of the speed which the car had to maintain in order to cover its prescribed course in the time allowed by the schedule, and make all stops. In the first place, the main basis of this calculation—the distance—is not established by any evidence, and could be arrived at by the court only by taking judicial knowledge of the termini of the route, and of the number of squares along the route, and of the length of the squares and the width of the streets. Even if the data were in the record, such a computation would be too uncertain to serve as a basis for judicial action. A car so scheduled might make extraordinary time at certain places and crawl along at others.

Judgment affirmed.