PYAETTE v. N. O. PUB. SERVICE, INC.

(February 25, 1929. Opinion and Decree.)
(March 18, 1929. Rehearing Refused.)

H. W. Kaiser and Martin H. Manion, of New Orleans, attorneys for plaintiff, appellant.

Ivy G. Kittredge, of New Orleans, attorney for defendant, appellee.

JANVIER, J. On Saturday, October 10, 1925, at about 3.00 o'clock in the afternoon, plaintiff's son, Warren, aged three years eleven months, was instantly killed by a street car of defendant company, near the corner of Magnolia and General Taylor Streets.

Plaintiff and his wife with their two boys—Warren, who was killed, and Robert N., Jr., aged five years eight months—lived at 3801 Magnolia Street. This house was situated on the lake side of the street about one hundred feet below the

corner of General Taylor Street. On the other side of Magnolia at the lower corner of General Taylor there was a grocery store.

On Magnolia Street there are two car tracks of defendant company.

Plaintiff's wife found herself in need of certain groceries and, as it was inconvenient for her to go to the store herself, she sent her two little boys. In order to reach the store it was necessary for them to go to the corner, about one hundred feet or so from their front gate, and then to cross the two tracks of defendant.

Mrs. Pyaette, being fearful of the safety of her two children, intended to stand at the front of her house to watch them safely over the tracks and back. However, while they were making the trip she was called to the telephone, where she remained a few minutes, and she returned to the front porch only a moment before the happening of the accident which gave rise to this suit.

The street car which ran over the little boy was on its way uptown. It was traveling at about twenty or twenty-five miles an hour until it reached a point variously estimated at from eighteen to fifty feet of the spot at which the boy was struck.

The boy was crossing the tracks on his way back to his home. He was struck by the car at a point a few feet on the lower side of the pedestrian crossing and the car was brought to a stop with its front end just below the crossing. These facts would indicate that the boy was returning to his home not by the usual route, but in a line either direct to his home or, at any rate, at an angle across the street.

It is charged by plaintiff that the motorman was not keeping a proper lookout ahead and that he should have seen the little boy sooner than he did. Plaintiff also contends that the fender on the front of the car was not lowered and that, if it had been lowered, the boy would have been caught in it and thus kept away from the wheels of the car.

Defendant claims that the motorman was keeping a proper lookout, that he saw the boy as soon as he could and that as soon as he saw him he did everything in his power to bring the car to a stop, but that the boy was running and that he came into view so short a time before the accident and when the car was so close to him that there was nothing that could be done to avoid striking him.

The motorman explains that his failure to lower the fender resulted from the fact that after seeing the boy he had just sufficient time to cut off his power, to reverse his motor and put on his brakes. He says that these activities exhausted the second or two intervening and that there was no time left to lower the fender, but that even had the fender been lowered, the result would have been the same, because the boy was not struck by the front of the fender, but in fact ran into the side of it and then fell under the car between the fender and the wheels. According to the evidence the fender, in its normal position, is parallel to the ground and between twelve and eighteen inches above the ground. The fact that a can of pet cream, which had been in the hands of the little boy, was found in the fender, proves rather conclusively that he struck the side of the fender and that his momentum caused this can of cream to fall forward into the fender. He him-

self was so small that the height of the fender from the ground was sufficient to prevent his falling into it.

Plaintiff attempts to show that the little boy was not running and that therefore there was ample time for the motorman to have seen him after he crossed the curb and entered the danger zone, had the motorman been more alert and diligent.

We are convinced that the boy was running when he struck the car and had been running at least from the time that he left the sidewalk. The disinterested witnesses testified to this and we are much impressed with their testimony, as well as with that of the motorman.

At the point at which the accident happened the street is forty-one feet ten inches from curb to curb, and the distance from the curb which the boy left just before the accident to the track on which he was hit was twenty-three feet.

The motorman states that when he first saw the boy he was at a point which, according to actual measurement, is eight and one-half feet from the curb. In other words, he had already crossed eight and a half feet of the street and also ten feet of the sidewalk. It is conceded that when he reached this point it was no longer possible for the motorman to avoid him, but it is argued that had the motorman seen him sooner, he would have applied the brakes sooner and thus might have averted the accident.

We believe that plaintiff's case on this theory hangs on too fine a thread. If the boy was running, as we feel sure he was, his speed must have been seven or eight miles an hour. Assuming that it was only seven miles an hour, he was moving a little more than ten feet a second. Plaintiff's argument, then, requires us to

hold that the motorman, in being about seven-eighths of a second too slow in seeing the boy, was negligent. To so hold would be to require a motorman to act with the mechanical precision and with the instantaneous reaction which are not possible of attainment by human beings:

"If he traversed the narrow space between the sidewalk and the track at a run, the time it took him to do it must have been so very brief as to have been approximately instantaneous, and certainly not sufficient to allow of the stopping of the car."

Litolff vs. N. O. Ry. & Light Co., 124 La. 278, 50 So. 105.

Of course, if the actions of the boy while he was yet on the sidewalk were such as to indicate his intention of running across the street, then the motorman was under a duty, as soon as he saw the boy and realized the possibility of his running across the street, to take immediate steps to avoid striking him. This has been the jurisprudence of this State since Burvant vs. Wolfe, 126 La. 787, 52 So. 1025, 29 L. R. A. (N. S.) 677.

But even conceding that the boy's actions were such as to give intimation of his intention to cross, this would have added only about one second more within which the motorman should have acted and, to have avoided the accident, would still have required more than human alertness and attentiveness.

But we do not believe that the boy's actions, while on the sidewalk, were suspicious. His brother testified that when they came out of the store they saw a car coming and had to wait for it to pass. He, the elder boy, while waiting looked into the store window. The younger apparently stayed in safety on the sidewalk while the other car passed and then sud-

denly ran out into the street. The motorman's delay of a fraction of a second in seeing him was not negligence.

A motorman cannot be expected to see and to instantly appreciate the danger of each minute happening within the possible range of his vision. In general, he must keep his eyes to the front and must allow them to range from side to side, but to hold that he must at each instant have his eyes focused on every object on each side of the track, as well as on everything in front, is asking too much:

"A motorman of an electric street car who sees a child playing upon one of the sidewalks, and in the discharge of his duty to others, who, for aught he knows, may be in danger, turns his eyes in another direction, is guilty of no negligence in failing to see the child leave the sidewalk and run in the direction of the approaching car, and where it appears that he saw the child a moment afterwards running towards the track, but too late to enable him to stop the car, though he did all that could then be done to stop it, the blame for the resulting tragedy cannot be laid at his door."

Cloud et ux vs. Alexandria Elec. Rys. Co., 121 La. 1061, 46 So. 1017, 18 L. R. A. (N. S.) 371.

On this phase of the matter we attach some importance to the fact that the car was approaching a curve and that this curve, upon being reached by the car, would take it towards the right. Not only instinct but also prudence requires that one, on approaching a curve, shall look into the direction into which the curve leads. It was proper, therefore, that the motorman's eyes should have been turned slightly to the right, into which direction the curve would take his car, rather than to the left, from which the child came.

As to the failure to lower the fender, we believe that the evidence establishes the fact that the child fell on the track behind the fender and not in front of it, and that therefore, even had it been lowered, the result would have been the same. Furthermore, we feel that in the emergency, which was not created by his negligence, the motorman did what any careful and prudent motorman would have done in directing all his energies to the stopping of the car.

Our conclusion is that the motorman did all that could be required of a careful, prudent and efficient operator. Feeling as we do, that there was no negligence on the part of the motorman, it is unnecessary to discuss the question of whether the mother's action in sending her children into a place of obvious danger should bar a recovery by her or her husband.

We believe that this case, in general, is governed by the principle announced by our Supreme Court in Miller vs. St. Charles St. R. Co. 114 La. 409, 38 So. 401, in which that court said:

"We do not think a motorman is obliged to check the speed of his car whenever there are persons on the sidewalk or at the corner, and if a child comes suddenly and unexpectedly from behind, or from among, such persons, and runs upon the track right in front of the car, so that it is impossible to stop the car in time to save it, we do not think the railway company is responsible."

It is therefore ordered, adjudged and decreed that the judgment appealed from be affirmed, at the cost of appellant.