MILLANNOS ET AL. v. FATTER

———

(January 11, 1932.  Opinion and Decree.)
(January 25, 1932.  Rehearing Refused.)
(February 29, 1932.  Writs of Certiorari and
Review Refused by Supreme Court.)

———

Jas. G. Schillin, of New Orleans, attorney for plaintiffs, appellants.

Daly & Hamlin and Edward Rightor, of New Orleans, attorneys for defendant, appellee.

JANVIER, J.  Mr. and Mrs. Michael Millannos appeal from a judgment rejecting their demand for reimbursement for damages sustained by them in the loss of their six year old daughter, Hazel, whose death, which they allege was the result of the accident, occurred about one month after she was struck and knocked down by an automobile owned by Mervin Fatter and operated by his son, who, though in possession of an automobile driver's license issued to him by the city authorities, was below the minimum age at which drivers are,

by the traffic ordinances of the city of New Orleans, permitted to lawfully obtain licenses.

Defendant denies that his son was negligent, and contends that the violation by his son of the ordinance prohibiting driving of automobiles by persons under sixteen years of age was not the proximate cause of the accident and, in fact, had no causal connection therewith.

The automobile operated by young Fatter was proceeding down Bourbon street. The child was struck at a point slightly to the right, or river side, of the middle of Bourbon street, and at from fifteen to twenty feet on the downtown, or lower side, of the intersection of that street with St. Philip street.

The speed of the car was about ten or twelve miles an hour. The accident occurred at about four o'clock in the afternoon.

The mother of the child, one of the appellants, had, just prior to the accident, walked on the lake side of Bourbon street, from the upper to the lower side of St. Philip street, and had then turned to her right and crossed Bourbon street. She then turned left, and proceeded about one-quarter or one-half a block down the river side of Bourbon street and was approaching the residence of her sister, when the accident occurred behind her, at the intersection she had shortly before negotiated.

She was not aware of the fact that she was being followed, at a distance of approximately one hundred feet or so, by her young daughter, who, having taken the route set by her mother, was struck while crossing Bourbon street.

The age of the child and its mental condition rendered her incapable, in legal contemplation, of being guilty of contributory negligence, and therefore the sole defense available to defendant is absence of negligence on the part of his son.

That there was negligence in several particulars is asserted by plaintiffs, who charge that the driver of the car was under the age permitted by the ordinances of the city and that this constituted negligence per se, and who further contend that the driver was guilty of actual negligence, in that he did not maintain a proper lookout and in that, after the unfortunate child had entered the street and was manifestly in imminent danger, the driver could still have stopped the car and avoided the accident, had he been competent and experienced.

The ordinance prohibiting persons under sixteen years of age from operating automobiles is founded on the knowledge that caution and regard for the rights of others, if they, in this modern age, exist at all, are so seldom found in very young persons as to render it advisable that instrumentalities potentially so dangerous be not permitted to be placed in their care, and it follows that, to violate such a law, is, in itself, negligence. However, as our Supreme Court said in a case, the legal principles of which are identical with those now under discussion:

"* * * The mere violation of a city ordinance by one citizen does not afford another a ground of action in damages, unless some direct relation of cause and effect between the violation and the damages can be traced with reasonable certainty."—Elmendorf v. Clark, 143 La. 971, 976, 79 So. 557, 558, L. R. A. 1918F, 802.

It is, then, not sufficient for recovery to show that there has been a technical violation of law, but it must also appear that, as a natural result of the violation, the accident occurred; that there was causal

connection between the two. In Elmendorf v. Clark, supra, is found a case in which recovery was sought for the death of a young boy, who was killed when struck by an automobile truck driven by a minor under the age limit permitted by the city ordinance of Monroe, La.

On first hearing the Supreme Court, in discussing the legal effect of the violation of the ordinance, said that the violation alone would not have rendered defendant liable, but that there was actual negligence on the part of the driver. On rehearing the court reconsidered the evidence in regard to the facts of the accident, and, having reached the conclusion that there was no fault in the actual operation of the truck, said that the mere violation of the ordinance did not create liability, and added:

"* * * If it were shown that the injury here complained of would have been sustained, even though defendant's car had been operated by a lawful chauffeur, at a lawful rate of speed, and that the chauffeur had been guilty of no negligence, defendant would be entitled to judgment in his favor, notwithstanding that, in fact, the car was operated by an unlawful chauffeur, at an unlawful rate of speed."

In other words, that the violation of the ordinance does not render liability absolute. No matter how young the driver may be, if the facts show that he operated the automobile carefully and with all due regard to the rights of others, there is no liability. On the other hand, no matter what the age of the driver, no matter how much experience he may have had, if the facts show that he operated the automobile carelessly and that accident resulted, there is liability, no matter how many licenses or certificates of efficiency he may have.

Such is the rule followed, almost without exception, elsewhere, and, as typical examples of pertinent pronouncements by courts of other states, we quote the following:

"* * * The question of proximate cause must be submitted to the jury. If they should find that death of the plaintiff's intestate was an unavoidable accident, which a prudent chauffeur, authorized by law to run a machine, could not by the exercise of reasonable care have avoided, then the defendants were not liable; but if they should find from all the evidence that the proximate cause of the intestate's death was the fast driving and lack of attention and due care upon the part of the 13 year old boy, driving the machine in violation of law, then he would be liable." Taylor v. Stewart et al., 175 N. C. 199, 95 S. E. 167, 168.

"In an action for damages, where it is alleged by the plaintiff that he has been damaged by collision with an automobile, driven by the minor son of the defendant, under the age limit required by a city ordinance for drivers of automobiles, and an instruction is given by the court to the jury that such violation of the city ordinance was negligence per se, and at the request of the defendant the court refused to give the further charge to the jury that such violation of the ordinance alone would not authorize a verdict against the defendant, unless the jury further found that the violation of the municipal ordinance was the proximate cause of the injury and was not directly contributed to by want of due care on part of the plaintiff, was error and the court should have further charged the jury that the violation of said ordinance must be the proximate cause of the injury and that they must find that said violation had some causal connection with said injury." Freeborn v. Holt, 100 Okl. 109, 227 P. 136 (syllabus).

See, also, Daily v. Maxwell, 152 Mo. App. 415, 133 S. W. 351; Taylor v. Stewart, 172 N. C. 203, 90 S. E. 134; Laubach v. Colley, 283 Pa. 366, 129 A. 88; Elliott v. Harding, 107 Ohio St. 501, 140 N. E. 338, 36 A. L. R. 1128; Buckingham v. Gilbert, 29 Ohio App. 216, 163 N. E. 306.

Our conclusion being that, by the mere violation of the ordinance, defendant is

not rendered liable, we must investigate the facts, as disclosed by the evidence, to ascertain whether the young son of defendant was guilty of actual carelessness in the operation of the car.

As to whether the daughter of plaintiffs was crossing Bourbon street at the place customarily used by pedestrians, or, as charged by defendant, some fifteen or eighteen feet below the line of the sidewalks of St. Philip street, we find the evidence to be as follows:

McVille, a witness placed on the stand by plaintiffs, says that, after the accident, the little girl was picked up between fifteen and twenty feet below the property line of the lower side of St. Philip street. She could not have been knocked to that spot, because the automobile stopped practically where it struck her.

Gary, another witness produced by plaintiffs, when asked: "How many feet down Bourbon Street was this child when you first ran out and saw it?" answered: "She was fully an average of eighteen to twenty feet."

Breaux, a witness for defendant, was sitting on the gallery over the spot at which the child left the Bourbon street sidewalk. Looking down, he saw her just before she was struck. When asked: "How far down Bourbon Street from the corner of St. Philip Street the child had been struck?" he said: "Well, about twelve to fifteen feet."

Young Fatter states that, as his car reached about the continuation of the property line of the lower side of St. Philip street, the child darted out from behind a gallery post about ten feet down Bourbon street from the property line.

We conclude that the child was not crossing at the usual place provided for pedestrians, but ten to twenty feet nearer the center of the block.

Plaintiffs charge that the child entered the street sufficiently far ahead of the automobile to have given an opportunity to Fatter to stop his car. Defendant counters with the assertion that the child ran suddenly from the sidewalk, and that there was no time to stop.

The evidence leaves no room to doubt that the child did not walk, as she left the sidewalk, but ran into the street.

McVille says that she was "just running along, as a child would. She was not running fast, because she was not a very large child."

Breaux states that when he first saw the little girl "she was running across the street."

Defendant's son, the driver of the car, says: "This little child darted out and ran in front of the car."

The fact that the mother was on the other side of the street, some half square away, and that the child was following her and was crying and was, apparently, attempting to overtake her, leads us to the belief that the child was hurrying and was following the most direct route.

Bourbon street is quite narrow. The point of contact was just beyond the center. Testimony of witnesses and the width of the street show that, when she was struck, the little girl had run not more than ten or twelve feet after leaving the sidewalk. We find in the record no denial of young Fatter's statement that she emerged from behind a gallery post. As young Fatter approached St. Philip street, he was operating his car at a speed of ten or twelve miles per hour. He states that he looked both ways for vehicles or persons

on the intersecting street. Having seen none, he was justified in assuming that he might proceed. Suddenly the little girl ran from behind the post and entered the street at an unexpected and unusual point. Fatter stopped his car so quickly that it went only two or three feet after striking her. We do not believe that, under these circumstances, it can be said that he was negligent. It is true that modern automobiles, operated at' moderate speeds, may be stopped within incredibly short distances, but what is possible when a test is being made cannot always be accomplished when attempted in an emergency. This was recognized by our Supreme Court in Elmendorf v. Clark, supra, in which that court said:

"The experts admit that, when it comes to stopping an automobile within a given number of feet, it makes quite a difference whether the stop is being made by way of testing the possibilities in that regard, or is being made in an unexpected emergency." Page 981 of 143 La., 79 So. 557, 560.

Plaintiffs rely largely on the doctrine announced in Fontaine v. Dorsey, 15 La. App. 282, 131 So. 506, the facts of which in certain particulars, resemble those disclosed by the record here, in which we said:

"When children are seen in pathway of motorist, extraordinary precaution should be observed to avoid injuring them."

But there the little boy who was struck had been walking, not running, across the street, and the court found that, after the danger became apparent to the driver of the automobile, there was time to stop and avert an accident. Here we feel that the contrary was true, and that the facts are more clearly analogous to those found in Fernandez v. Montz, 151 La. 299, 91 So. 742, 743, in which the accident occurred in the following way:

"The little girl ran from the sidewalk to the side of the street car, hesitated, then attempted to pass behind the street car, ahead of the automobile, and when defendant first saw her it was too late to avoid the accident."

That the accident did not occur at a street corner is to be taken into consideration, for, while at all times automobile drivers must exercise caution commensurate with the surrounding conditions, it is very apparent that there is. and should be less danger between intersections than at them. As the Supreme Court said in Fernandez v. Montz, supra:

"Ordinary care and prudence require that a person driving an automobile should exercise the greatest caution when passing street crossings used by pedestrians at street intersections. Pedestrians are bound to use these crossings, and they are of right as much entitled to the use of the street at such crossings as those who drive vehicles. But after the driver of a vehicle has passed the crossings, he is not called upon to exercise the same degree of caution, because, sidewalks being reserved exclusively for the use of pedestrians, he has no reason to expect pedestrians to use the street as a sidewalk. Of course if defendant had seen plaintiffs' little girl in time to avoid the accident, even though she was in a portion of the street not intended for pedestrians, he would be liable under the doctrine of the last clear chance, but the facts appearing in this record do not justify the application of that doctrine."

That children may be expected to do the unexpected, and that therefore persons operating automobiles in close proximity to points at which children walk or congregate or play must exercise more care than would be necessary where only adults are found, is true; and in Burvant et ux. v. Wolfe, 126 La. 787, 52 So. 1025, 29 L. R. A. (N. S.) 677, an automobile driver was held liable because he did not anticipate that a boy, whom he should have seen on the sidewalk, might run into the path of

his car; and, in Jacoby v. Gallaher, 12 La. App. 477, 126 So. 86, we held an automobile driver liable because he did not give to a young boy, walking alongside the road ahead of him, such warning as would have prevented the child from carelessly crossing the road in front of the approaching automobile. But in those and other similar cases, the children involved were, or should have been seen by the respective automobile drivers, whereas here, not only was the child not seen, but her presence was obscured by an obstruction. Therefore the rule applicable here is that there is no liability for injury, even to an immature child, where the child, at an unusual or unexpected place, suddenly runs into danger, when the automobile driver no longer has an opportunity to stop or to avert an accident.

In Miller v. St. Charles St. R. Co., 114 La. 409, 38 So. 401, the Supreme Court said:

"We do not think a motorman is obliged to check the speed of his car whenever there are persons on the sidewalk or at the corner, and if a child comes suddenly and unexpectedly from behind, or from among, such persons, and runs upon the track right in front of the car, so that it is impossible to stop the car in time to save it, we do not think the railway company is responsible."

The syllabus written by the court in Valcour v. Simon Hubig Co., Inc., 4 La. App. 521, reads as follows:

"Where the evidence shows that an eight-year-old boy, in charge of his eleven-year-old sister, suddenly left his sister and darted across the roadway and in front of a motor truck, which ran over and injured him, the accident will be attributed to the reckless conduct of the boy and there can be no recovery of damages against the owner of the motor truck."

In the syllabus of Powers v. Simmons, 7 La. App. 523, we find:

"Where a child walking on the right hand side of the road suddenly turns and runs in front of an automobile, making an accident unavoidable, although the auto was being driven at a moderate rate of speed, the driver not being negligent, there can be no recovery of damages for the death of the child."

In a case rather similar to this, in which a very young boy was killed by a street car, we held that, since the boy had run from the sidewalk, it required only a very short time to cross the intervening space between the sidewalk and the street car. That case was Pyaette v. N. O. Public Service, Inc., 10 La. App. 300, 120 So. 483, 484. We said:

"We believe that plaintiff's case on this theory hangs on too fine a thread. If the boy was running, as we feel sure he was, his speed must have been seven or eight miles an hour. Assuming that it was only seven miles an hour, he was moving a little more than ten feet a second. Plaintiff's argument, then, requires us to hold that the motorman, in being about seven-eighths of a second too slow in seeing the boy, was negligent. To so hold would be to require a motorman to act with the mechanical precision and with the instantaneous reaction which is not possible of attainment by human beings."

And, in discussing a similar situation, the Supreme Court, in Litolff v. N. O. Ry. & Light Co., 124 La. 278, 50 So. 105, 107, used this language:

"If he traversed the narrow space between the sidewalk and the track at a run, the time it took him to do it must have been so very brief as to have been approximately instantaneous, and certainly not sufficient to allow of the stopping of the car."

We feel that young Fatter did everything that was humanly possible to avoid the accident, and was not at fault in any particular.

The judgment appealed from is affirmed.