**VALLERY et al. v. TECHE LINES, Inc.**[*]

No. 16314.

Court of Appeal of Louisiana. Orleans.

March 23, 1936.

I. E. Uzzo and Jas. J. Landry, both of New Orleans, for appellants.

Porteous, Johnson & Humphrey, of New Orleans, for appellee.

JANVIER, Judge.

Maurice and Evelina Vallery, alleging that their daughter, Josephine, nearly eleven years of age, was killed as a result of the negligence of the driver of one of defendant corporation's large motorbuses, seek judgment against the said corporation in the sum of $15,000. They allege that, as the bus approached, the young girl, with her mother, was standing on the extreme right-hand edge of the road and that it was the mother's intention to place the said daughter in the bus as a passenger; that the proper "stop" signal had been given and that the bus driver had indicated his intention of stopping to take on the said passengers; but that, as a result of the carelessness of the operator, the said vehicle was driven too close to the right-hand side of the road, where, because of its speed, it ran over the child before it could be brought to a stop.

Defendant's version of the accident is entirely different. It admits that the child was run over and killed, but it avers that its operator was in no way at fault, and alleges that the accident was caused solely by the carelessness of the little girl and her mother in running across the road from the left to the right side when the bus was too near to them, and that the child was struck, not after she had reached the right-hand side of the road, but as she was crossing in front of the approaching bus.

Defendant also denies that the young girl was the legitimate daughter of plaintiffs and maintains that, even if there was negligence on the part of its employee and even if that negligence was the legal cause of the death, nevertheless there can be no recovery for the reason that there is no cause of action for the death of an illegitimate child.

Counsel for plaintiffs contend that because of the fact that the mother intended to place the young girl in the bus as a passenger, there was a duty of care in defendant greater than that which it owed to the general public; that its obligation towards her as a prospective passenger was greater than it would have been had she been a pedestrian standing alongside the roadway with no intention of becoming a passenger, and they maintain that, as a result of these facts, the burden of proof which ordinarily rests upon plaintiffs was placed upon defendant; and that, if it would escape liability, it must sustain the burden of proving itself free from fault.

[*]Rehearing denied April 20, 1936.

There is disagreement in legal and judicial circles concerning the question of whether, in all cases in which passengers are injured, the burden of absolving itself from fault rests upon the defendant carrier. Some hold to the view that it is only where the facts concerning the cause of the accident obviously could not come to the knowledge of the injured party that the burden of proof shifts to the defendant, and that in all other cases, where the injured party manifestly is as well situated to know the facts as is the defendant, the burden remains upon the shoulders of plaintiff. Others hold to the view that in all cases in which a passenger is injured the burden rests upon the defendant carrier to absolve itself.

We deem it unnecessary that we consider or discuss this most interesting academic question, because we find in the record a very complete story of the whole occurrence, and we reach our conclusion on the facts independently of any question of whether one party or the other should have assumed the burden of proof, or whether the accident raises a presumption of fault in the employe of the carrier.

■ The defense that the child was illegitimate presents a most interesting problem, for it is well settled that there can be no recovery for the death of an illegitimate child. See Landry v. American Creosote Works, 119 La. 231, 43 So. 1016, 11 L.R.A.(N.S.) 387; Lynch v. Knoop, 118 La. 611, 43 So. 252, 8 L.R.A.(N.S.) 480, 118 Am.St.Rep. 391, 10 Ann.Cas. 807; Vaughan v. Dalton-Lard Lumber Co. et al., 119 La. 61, 43 So. 926; Mount v. Tremont Lumber Co., 121 La. 64, 16 L.R.A.(N.S.) 199, 126 Am.St.Rep. 312, 15 Ann.Cas. 148; Green et al. v. New Orleans, S. & G. I. R. Co., 141 La. 120, 74 So. 717; Sesostris Youchican v. Texas & P. R. Co., 147 La. 1080, 86 So. 551.

■ There can be no doubt that the plaintiffs had been legally married several years before the child Josephine was born to the mother, and there is equally no doubt that the said spouses had never been legally separated or divorced. Therefore, when the child was born to the mother the birth occurred during the existence of the marriage and the presumption of legitimacy necessarily follows from that fact. Rev.Civ. Code, art. 184. It is conceded that the husband took no action looking to the disavowal of the child, and it is therefore argued by plaintiffs that the presumption of legitima-

cy, which could have been overcome by the husband's action "en desaveu" (Rev.Civ. Code, arts. 185, 191), or by the heirs of the husband in certain cases (Rev.Civ.Code, art. 192), cannot in this case be overcome at all, since the child is now nearly eleven years of age and since the fact of her birth has been known to the husband for several years without any action by him; and, in support of the view that the presumption has therefore become absolute and conclusive, they cite, among others, the case of Beard v. Vincent, 174 La. 869, 141 So. 862, 864, in which the Supreme Court, discussing the effect of a judicial confession of illegitimacy, said:

"It is true that judicial confession is full proof against him who made it. C.C. art. 2291. But, if he be prohibited by the highest considerations of good order and public policy from making such confession, it could not be contended seriously that it had the least effect."

But defendant, while conceding the general rule to be as contended for by plaintiffs, maintains that there should be an exception here, for the plaintiffs themselves have proven that the child is illegitimate. They assert that it is necessary that plaintiffs allege legitimacy and that they prove it and that, although in proof of it they might have relied on the presumption to which we have referred, they did not do so and undertook to prove this fact by oral evidence. Defendant thus maintains that when the mother, one of the plaintiffs, was called upon to testify to this fact, and, instead of doing so, volunteered the information that the child, though born during the existence of the marriage, was in fact not the daughter of her husband, she testified to facts which definitely showed that neither she nor her husband had any cause of action.

Here, again, we find it unnecessary, for the reasons which we shall set forth later, to reach a conclusion.

■ We, therefore, investigate the evidence touching upon the facts of the accident itself. We find it clearly established that the mother and the child were not standing on the right-hand edge of the road waiting for the bus, as it approached, but that they in fact ran across the road immediately in front of it and as it was bearing down upon them. The evidence so overwhelmingly refutes the claim of plaintiffs on this point that we deem it unnecessary to even mention the many witnesses who stat-

ed that they saw these two persons run across ahead of the approaching vehicle. There is some variance in the evidence as to whether the mother and the little girl were screened from the view of the operator of the bus as he approached, being inside a gateway and hidden by it and by shrubbery from which they suddenly emerged, or whether they were standing exposed to view on the left-hand side of the road as the bus neared them and ran across to the other side at the last moment. We conclude from the evidence that they were standing inside the gateway and were not in a position which would have permitted the operator to see them until he reached a point very near to them and until the mother ran across in front of him, which the record shows plainly she did when the bus was about 70 or 80 feet away. She was impeded by a satchel which she was carrying, and she suddenly darted across the road and slipped, or stumbled slightly, but nevertheless arrived at the other side in safety.

It is shown that the operator of the bus immediately applied the brakes and substantially reduced the speed, but that, when the vehicle was about 20 or 25 feet away, the little girl, who, until then, had also been on the left-hand side of the road and, we believe, within the gate or inside the yard, decided to follow her mother and suddenly dashed across when the bus, although its speed had been much reduced, was so near that it could not be stopped before striking her.

It is possible that the child was standing on the edge of the road and not within the gate, as her mother dashed across. If so, the operator should have exercised extreme care because children so situated sometimes do the unexpected and place themselves in unnecessary danger. See Burvant v. Wolfe, 126 La. 787, 52 So. 1025, 29 L.R. A.(N.S.) 677; Jacoby v. Gallaher, 12 La. App. 477, 126 So. 86. But we feel that the operator did exercise sufficient care and caution when he reduced his speed and prepared to stop to permit the mother to embark upon the bus, even conceding that he saw the child standing at the edge of the roadway when the mother rushed across. He knew that all of the houses in that vicinity were on the side of the road from which the mother had come and on which the child was standing. In the mother's hand there was a satchel indicating that she evidently was leaving on a trip away from home, and he was thus justified in as-

suming, if he saw the little girl on the roadway, that she had gone out of the gate and was standing there to wave farewell to her mother, or to see her mother embark upon the bus. He certainly could not assume that, if both were to become passengers, the mother would have crossed ahead and have left the little girl to follow behind. Therefore, in either case, whether the child was screened from view, or whether she was standing upon the edge of the road watching her mother cross, we feel that there was no negligence on the part of the bus driver, and we feel that in either case there was great carelessness on the part of the little girl herself. She was nearly eleven years of age, was shown to be a bright, normal child, and was fully capable of recognizing the extreme danger of her act.

Nor can it be said that defendant's driver had an opportunity to avoid striking her after she had placed herself in that dangerous position. The record abundantly shows that the operator did all that was possible to avoid her and to stop his vehicle. Many disinterested witnesses testified to his immediate application of the brakes and to the further fact that he swerved as far as possible to his left in an effort to avoid her. He apparently did this because he realized that she was running towards his right and felt that, by swerving to the left, she might possibly pass completely. It is contended that his judgment was bad and that he should have swerved to his right. While most of the witnesses agree that his decision that a left turn to avoid her seemed to be justified by the action of the little girl herself, still, even if his judgment was faulty in this regard, it cannot be said that liability should result therefrom because the emergency was in no way of his own creation, and one cannot be charged with negligence who, in an emergency, not created or contributed to by himself, acts in a way not obviously faulty. Buckner v. Powers, 12 La. App. 630, 125 So. 744; Hunt v. Jones, 14 La.App. 520, 130 So. 138; Martin v. Cazedessus, 15 La.App. 100, 130 So. 129; Rosen v. Lloveras (La.App.) 148 So. 734; Downey v. Dittmer (La.App.) 151 So. 653.

The conclusion which we reach is that the operator of the bus was not at fault and that the accident was caused solely by the cross carelessness of the little girl herself in running across ahead of the bus.

It therefore becomes unnecessary that we discuss the interesting legal question as to

whether or not the testimony of the mother could be availed of to overcome the presumption of legitimacy which results from the father's failure to disavow the child.

For the reasons given it is ordered, adjudged, and decreed that the judgment appealed from be, and it is, affirmed.

Affirmed.