## SMITH v. CITY OF ALEXANDRIA et al.
### No. 5635.

Court of Appeal of Louisiana. Second Circuit.

Jan. 28, 1938.

Gist & Thornton, of Alexandria, for appellants.

J. B. Nachman and Isaac Wahlder, both of Alexandria, for appellee.

TALIAFERRO, Judge.

This is a tort action by Mrs. Florentine Smith, wife of Ralph Smith, individually and as natural tutrix of her minor son, Hilray Dupuis, issue of her first marriage, against the city of Alexandria, La., and the United States Fidelity & Guaranty Company of Maryland, the carrier of the city's public liability insurance, to cover damages to the son resulting from injuries suffered by him when accidentally run over by an automobile driven by Tom Barron, elec-

trician of the city, while discharging the duties of his employment.

The accident occurred on Monroe street at or about the eastern side of its intersection with Eighth street. The time was 10 a. m., January 17, 1936. Both streets are paved. Monroe street carries more traffic. It runs easterly and westerly, and is 33.20 feet between curbs. Traffic thereon has a right of way over that on Eighth street.

Barron, returning from an errand for the city and driving one of its automobiles, a Ford V-8 coupé, was traveling easterly on Monroe street. Hilray Dupuis had crossed Monroe street from the south and had made a purchase from a store at the northeast corner of the intersection, and was attempting to again cross Monroe street towards the south and had covered about 20 feet of the distance when struck by the Barron car. The negligence of Barron, alleged to be the sole cause of the accident, consists of the following, viz.: That he was driving his car at a reckless and dangerous rate of speed, in excess of the maximum rate fixed by laws of the city, as he approached and entered the intersection; that he failed to keep an adequate lookout for pedestrians and, on account of said excessive speed, did not maintain that near-complete control of the car's operation which the situation and circumstances demanded; and, in amplification of the latter allegation, avers that if he had had the automobile under proper control, he could have avoided striking the child either by stopping the car or by turning it aside, on discovering his perilous position.

Defendants, in limine, interposed an exception to the capacity of Mrs. Smith, as tutor, to institute and prosecute this suit and stand in judgment therein. The exception was overruled. It is moderately urged here.

Defendants deny all the acts of negligence and carelessness charged against Barron, and affirmatively aver freedom therefrom on his part as a cause or contributory cause of the accident. They aver further that the accident, from Barron's standpoint, was unavoidable, because said child suddenly, negligently, and carelessly darted across the street in front of his car, and from behind another car moving westerly, within such close proximity that it was impossible for him to so control the movements of his own car as to avert striking the boy; and this, too, notwithstanding that he was at the time driving at a safe and reasonable rate of speed and applied his brakes instantly on discovering the boy's perilous situation. It is specifically denied also that the injuries to the boy were or are of the serious character, nature, and duration as by plaintiff contended. In the alternative, the contributory negligence of the boy, in the respects above mentioned, is set up in bar of plaintiff's recovery.

Defendants prosecute this appeal from a judgment against them for $2,735. Plaintiff, feeling aggrieved at the quantum, here prays for more.

### Exception to Capacity to Sue.

Plaintiff was first married to Armand Dupuis. The minor, Hilray Dupuis, according to the record before us, is the issue of that marriage. A final divorce was rendered between the parties on June 25, 1934. It was procured by the wife. It is silent as regards the custody of the child. Thereafter, Mrs. Dupuis married Ralph Smith. In December, 1936, she qualified in Rapides parish as natural tutrix of Hilray, and the present suit was promptly instituted. The exception attacks the appointment of Mrs. Smith as tutrix, as being absolutely null, void, and of no effect because, at the time, the father of the minor was living; and avers that he alone is entitled to be qualified as its tutor since its custody was not given the mother by the final divorce decree, and also because she has remarried. The appointment is also attacked on the ground that the Ninth judicial district court of Rapides parish was without jurisdiction to appoint a tutor to the child for the reason that its legal domicile was in Avoyelles parish, the domicile of the father. In the alternative, the appointment is attacked as being null and void, because it was not previously authorized by a family meeting, and, further, for the reason that Ralph Smith was not appointed as cotutor.

Exceptors cite no law or decisions to support their position. They simply call our attention to the filing of the exception and state that they have not abandoned it.

Defendant in exception asserts the legality of the attacked appointment; and, alternatively, argue that if not entirely legal, it may not be collaterally attacked.

■ Article 157 of the Revised Civil Code, as amended, provides that in cases of separation and divorce, the minor chil-

dren, issue of the marriage, shall be placed in care of the parent in whose favor judgment has been rendered, "unless the judge shall, for the greater advantage of the children, order that some or all of them shall be entrusted to the care of the other party." It also provides that "the party" to whom has been intrusted the care of a child or children shall of right become natural tutor or tutrix of such child or children to same extent as if "the other party had died." Plaintiff was entitled to have her superior right to the care and custody of said minor awarded to her by the judgment of divorce in her favor. The absence from that judgment of such a decree did not divest her of this right. She could assert it thereafter. The question was simply left open. Whitbeck v. Whitbeck, 170 La. 418, 127 So. 888, 889. Counsel for plaintiff rely mainly upon Lemunier v. McCearly, 37 La.Ann. 133; but as regards that case, on the question under discussion, the court in the Whitbeck Case, in passing, said:

"The decision in Lemunier v. McCearly, therefore, is not authority for the proposition that a decree of divorce or of separation from bed and board is, of itself, when silent on the subject of the care and custody of the children of the marriage, an order to deliver them into the care and custody of the parent in whose favor the decree was rendered."

■ Be this as it may, the mother appears to have retained and exercised parental care, control, and custody of the person of the minor after the divorce, and while residing in Rapides parish, and this right was confirmed to her when the district court of that parish recognized her as being entitled to qualify as its natural tutrix. This recognition could only be conferred upon her as an incident to her superior right to the care and custody of the child; and, in effect, the court awarded to her the care and custody of the child when it permitted her to qualify as its natural tutrix.

■ The record does not disclose the domicile of Armand Dupuis, the father, when plaintiff qualified as tutrix. In the absence of such proof, we are not authorized to assume that it was not in Rapides parish. This is said in response to the allegation that the district court was without jurisdiction to appoint a tutor to Hilray Dupuis. However, our view of the matter removes this question from the case as an important one.

■ Plaintiff is now functioning as the natural tutrix of her son under a solemn judgment of the court of her domicile. Such a judgment carries with it the force of res judicata, and its legality may only be assailed, in a direct action by one having a clear right to so do. It may not be collaterally attacked, as is attempted in this cause. Gandy et al. v. Caldwell, 169 La. 870, 126 So. 221; Robinson v. Scharfenstein & Son et al., 148 La. 364, 86 So. 915; Succession of Keller et ux., 39 La.Ann. 579, 2 So. 553. In this case, the court emphatically states the rule to be: "Now, one of the most familiar rules of our jurisprudence is to the effect that the correctness or regularity of a judgment of a competent court appointing a tutor cannot be collaterally reviewed or questioned, even by the court which has made the appointment."

We find no merit either in the other points raised by the exception, and are of the opinion that it was properly overruled.

### The Merits.

This case measures up to the almost invariable rule prevailing in damage suits arising from automobile collisions or accidents wherein they are involved. The testimonial proof of the two sides, with some minor exceptions, is so diametrically opposed as to be beyond reconciliation to any material extent.

According to plaintiff's several witnesses, Hilray Dupuis left the curb on the north side of Monroe street, after emerging from the store where he had made a purchase, and proceeded leisurely across the street until a toy or skate he was dragging by a string caught in the south rail of the street car track which traverses the center of the street; that he stooped over to release the toy or skate and while thus engaged, was struck by the Barron car. These witnesses all testified that Barron's car was traveling at a speed of 30 or 35 miles per hour for a considerable distance from and to the point of the collision. They are equally positive that at the time there were no cars on Monroe street to prevent or interfere with Barron seeing the boy in time to have averted running him down. The speed limit for automobiles on Monroe street has been fixed by ordinance of the city at 18 miles per hour.

We are satisfied from all the testimony bearing thereon that Barron's car was making not less than 30 miles per hour as he entered the intersection. This rate was only reduced as the brakes were forcefully applied when within a few feet of the boy. Therefore, should plaintiff's witnesses be believed, a clear case of negligence is made out against Barron, the city's agent and employee. His excessive speed was negligence per se, and the sole cause of the accident. Under this testimony, he had ample time and opportunity to have seen the boy busily engaged with his fastened toy or skate within a distance in which he could have stopped his car before injuring him. Barron and his witnesses give an entirely different version of the status of things in and about the intersection at the time of and immediately prior to the accident. However, it is our opinion that defendants are liable for the results of the accident under the testimony adduced in their behalf.

J. I. Roby, a reputable business man of Lecompte, La., testified that immediately before the accident he was driving westerly on Monroe street, and when the accident actually occurred, had turned his car northerly (to his right) into Eighth street; that on Monroe street, an old model car of some sort was preceding him a distance of 25 or 30 yards as he neared the intersection; that he saw the Dupuis child come to the curb on his right, having in his hand or pulling by a string, some sort of toy; that the child stepped from the curb to the street for the obvious purpose of going across, but the presence of the other car, which had slowed down to some extent, momentarily deterred him from so doing; that the boy returned to the sidewalk, and by that time, witness' car was nearer the other car; that his own car was then brought almost to a stop because he thought the child would attempt to cross the street ahead of him. He testified further: "— just instinct told me when he didn't run across in front of mine he would go behind me and when I turned to the right I glanced up as I turned the corner in my rear view mirror and I saw the child flash by and a very, very short time after that I heard the brakes screeching and a scream." He also said that the child was "going fast" as he made the second attempt to cross the street, and denies that it was endeavoring to release the toy from the rail. He further said that he had not completed the turn into Eighth street when he heard the brakes of the Barron car screeching and the child's screams; that as he began to execute the turn, he observed the Barron car approaching, and felt that it was far enough away for him to safely make the turn. This witness' version of the accident is in whole or part corroborated by other witnesses.

Barron testified that he was about the center of the intersection when the boy dashed out into the street from behind Roby's car; that he was too close to it to avoid the collision, although he instantly applied the brakes, which were in perfect order, and cut the car to his left. He states also that there was a car parked against the curb on his side of the street immediately across the intersection, which prevented him from driving in front of the child, then hastily crossing at right angles to him. He also testified that as he approached the intersection his vision was focused down the center of the street and that the line of traffic thereon prevented him from seeing the corner where the boy had been standing and from which he ran. He admits that he was traveling 20 miles, and possibly more, per hour.

The most dependable evidence before us on the subject discloses that Barron applied his brakes when his rear wheels were practically in the center of Eighth street, which is 33.30 feet wide. The brakes on the front wheels had been previously disengaged to prevent the car turning over when rapidly rounding corners in response to fire alarms, etc. This car was over 13 feet long. Therefore, its front end was very close to the east side of the intersection when the brakes were applied. The boy was very close to this side also when struck. The car skidded 27 feet before coming to a stop. This indicates somewhat forcefully that Barron was going at a speed considerably in excess of 20 miles per hour. The boy was dragged or shoved approximately 13 feet.

Three of the four angles of this intersection are occupied by retail business establishments. In the fourth, there is a wholesale concern. The surrounding area is well improved with residences of white and colored people who trade with said retail merchants. Children frequent the scene to trade. Considerable traffic moves about the locus. Notwithstanding that traffic on Monroe street has a right of way over that on Eighth street, a motorist may not with impunity dash up to and over the intersec-

tion without exposing himself to responsibility for injury to others which would be averted if a more prudent course were pursued, one, at least, not reprobated by law.

Barron held a responsible position with the city and had held it for some years. He frequently drove over the intersection and was well aware of traffic and other conditions thereabout. Legally, he was charged with the knowledge that children might be expected to imprudently cross the intersection or the streets in the path of moving vehicles. Therefore, it behooved him as a motorist and particularly as an employee of the city to exercise the maximum of caution and to at least observe the letter of the law, as he approached and crossed the intersection, to the end that injury to others might be averted, even under emergent conditions. It is reasonable to conclude that had he been driving his car at a lawful rate, the accident would not have occurred. This conclusion is based upon two propositions, viz.:

1. He would have reached the intersection an appreciable time later than he did, thereby giving the child sufficient time to reach a place of safety. One-fourth of a second would probably have been ample. The right front fender hit it. Anent this point, see Duffy v. Hickey, 151 La. 274, 91 So. 733. In this case it was held:

"It was an automobile driver's duty, when he approached a street crossing where people were constantly crossing, to have the automobile under full control, so that it could be stopped quickly in event of emergency and to have his lights burning."

2. He would probably have been able to stop the truck before striking the child, after discovering its presence before him.

A close study of the testimony leaves us convinced that Barron should have observed this child as it made the first attempt to go across the street and returned to the sidewalk. There was then no obstruction to his line of vision to the point. Roby's car had come to a near stop and the one ahead of him was then a considerable distance down the street. He says he was studiously looking down the center of the street. This is doubtless the reason he failed to see the boy. He must be held to have seen that which it was possible to and should have been seen by him. If he had exercised reasonable care and caution, he would have seen the child and would have learned that it desired to cross the street, and this knowledge would have enabled him to positively guard against injuring it regardless of its further movements.

A witness for defendant, on Barron's side of the street, though much nearer to the child than he, testified that he observed its movements as testified to by Roby.

Pedestrians have the right, well recognized, to assume that persons who use the streets and roads will observe traffic regulations primarily designed to protect those who do observe them. The Dupuis boy, it may be properly assumed, before attempting to cross the street the second time, as he previously did, looked to his right for cars, and if he did so, it is certain he observed the Barron car approaching on its side of the street. It is difficult to accurately estimate the speed of a car coming towards you. His haste signifies his belief that he could successfully cross over before the car reached the line he was pursuing and this would have come to pass had it been traveling at a speed the child was warranted in assuming it was traveling or would travel. If error in pursuing this line of conduct is made, it does not constitute contributory negligence amounting to the or a proximate cause of the accident. Hamilton v. Lee, La.App., 144 So. 249; Haley v. Black, La.App., 152 So. 805.

In support of their plea of contributory negligence, defendants cite the following cases from some of which they quote, viz.: Valcour v. Simon Hubig Co., 4 La.App. 521; Farque v. Gulf States Utilities Co., La.App., 140 So. 90; Madison v. Berry et al., La.App., 145 So. 694; Martinez et al. v. Crusel, La.App., 148 So. 742; Hanley v. Anthony, 3 La.App. 727, 729; Payne v. Seibert, 4 La.App. 591; Millannos et al. v. Fatter, 18 La.App. 708, 138 So. 878; Litolff v. New Orleans Ry. & Light Co., 124 La. 278, 50 So. 105; Powers v. Simmons, 7 La.App. 523; Monroe v. Eager, 16 La.App. 540, 131 So. 719; Biagi v. New Amsterdam Cas. Co., 151 La. 925, 92 So. 387; Collier v. Frank Varino & Co., 153 La. 636, 96 So. 500; Jacobs v. Williams, La.App., 160 So. 861; Vallery v. Teche Lines, Inc., La.App., 166 So. 646; Carter v. Carraway, 18 La.App. 249, 138 So. 143; Owens v. Tisdale, La. App., 153 So. 564; Edminston v. Terrill Bros. Grocery Co. et al., 12 La.App. 373, 125 So. 495; Henderson v. Percy, La.

App., 159 So. 357; Guillory v. United Gas Public Service Co. et al., La.App., 148 So. 274.

In all of these cases it appears that the injured person, several of whom were children, suddenly projected himself or herself across the path of an on-coming vehicle, or stepped from a sidewalk in front of one. In only one (the Collier Case) does it appear that the vehicle was exceeding the speed limit when the accident occurred. The facts of none of which are on all-fours with the case at bar.

The trial judge, ripe in experience as a judge in cases of this character, extending over a period of many years, as clearly reflected from the record, closely observed the progress of the trial and the demeanor of the witnesses who gave evidence in the case. He resolved the factual issues against defendants. We are not prepared to say he erred, even should the case be solely adjudged upon defendants' own evidence. Surely, according to the evidence on behalf of plaintiff, the case is clearly with her.

■ The boy was not run over by the wheels of the car. His injuries, in addition to shock and abrasions, consisted of bruised lips and maxillary bone; loosened teeth, which had to be removed; oblique fracture of the left femur, about the middle third; and a fracture of both bones of the right leg immediately above the ankle. The only permanent impairment resulting from the injuries is the shortening of the left leg by not over 1 inch. To compensate for this, a slight curvature of the spine to the left has developed. This may be measurably removed by the use of high heeled or blocked-up shoes. The boy suffered considerable pain over several weeks; was confined to the hospital for fourteen days. A plaster cast from his chest to feet was applied and worn for ten weeks. This caused much discomfort. He used crutches for several months and lost five pounds during the time, from lack of physical exercise.

Plaintiff contends that the nervous system of the boy has been permanently impaired from the shock of the collision and for this reason asks for an increase in damages. We do not think there is merit in this contention. The clear preponderence of the medical testimony is to the effect that the boy has almost entirely recovered from the effects of the injuries. In due time, his recovery will ɔe complete

save the shortened left leg. He is now a little over nine years of age. This is very much in his favor.

For the reasons herein assigned, the judgment appealed from is affirmed.