Peter Fourmeaux, Sr., who brought this suit on behalf and for the use and benefit of his minor son, Peter, Jr., appeals from a judgment rejecting a demand for damages for physical injuries received by the boy when he was knocked down as a result of contact with the side of a motor truck owned by defendant and driven by an employee who at the time was admittedly acting within the scope of his employment.
The accident occurred at the corner of Fourth and Constance Streets at about 12:30 on the afternoon of July 28, 1937.
Constance Street on which the truck was being operated is a one-way street, vehicles being permitted to be driven in an uptown direction only. Defendant's truck was on its way uptown and the little boy, who at the time was only six years old, had come out of a grocery store on the lower, river corner of the intersection and was crossing Constance Street, either directly as contended by plaintiff, or diagonally to the uptown, lake corner as asserted by defendant.
In the petition the only charge of negligence is that the driver of the truck "stopped for the crossing * * * saw the boy about to cross * * * waived his hand for petitioner's minor son to cross the street" and then started the truck as the little fellow was crossing, ran into him and knocked him down.
On the trial plaintiff entirely abandoned the allegations of his petition and attempted to prove that when the boy came out of the grocery store he could, and should, have been seen by the truck driver who should have realized that the boy intended to cross and was not aware of the approach of the truck. Plaintiff now asserts that the truck driver was negligent in approaching the intersection at too high a rate of speed, in failing to notice and avoid the young boy, in failing to sound his horn as he entered the intersection, and in passing another vehicle while the two vehicles were entering the intersection.
Defendant asserts that the truck approached the crossing at a moderate speed and that just as it was about to enter the intersection, or just as the front of it had entered, the little boy ran out of the grocery store and, without looking, dashed diagonally across the intersection and ran into the side of the passing truck at the rear end of the left front fender.
It is not contended by defendant that the little boy was guilty of contributory negligence; in fact, counsel for the defendant states that his age was such that he could not, in legal contemplation have been guilty of negligence, and that the sole defense available is that there was no negligence on the part of the truck driver which had any causal connection with the unfortunate accident.
That the speed of the truck was moderate is overwhelmingly shown. The driver says that as he approached the intersection, his truck was running at about 15 miles per hour; that as he intended to pass a slower moving Ford Coupe which was going about 8 or 10 miles an hour, he sounded his horn and reduced his speed to 10 or 12 miles an hour.
The only two other eyewitnesses who testified were Edward McDevitt, who was at the rear of a truck which was standing at that same corner on Fourth Street, and Thomas Capo, Jr., who was seated in an automobile alongside the grocery store, which automobile was facing in an uptown direction, and in front of which stationary car, the little boy passed just before running into the side of defendant's truck.
McDevitt says that when he saw the truck — which was when it was in the intersection — it was running at "about 16 miles at most" and he adds that when the accident occurred "it looked like it stopped immediately."
Capo says that the truck was running "at about 15 miles per hour I imagine." And when counsel for plaintiff suggested that it might have been 20 miles per hour, he said: "No; I hardly think he would have stopped in such a short space."
It is argued by counsel for plaintiff that the driver of the truck was *Page 733 
negligent in attempting to pass the Ford coupe while the two vehicles were crossing the intersection. The record leaves the impression that when the truck entered the intersection it had already passed the Ford. The driver so testified and neither McDevitt nor Capo noticed the Ford. Surely they would have noticed it had that car and the truck been alongside each other in the intersection. Even if there was a technical violation of the City Traffic Ordinance in this regard, we cannot see that such violation had anything whatever to do with the accident. Liability is not imposed by the violation of an ordinance unless such violation has a causal connection with an ensuing accident. Elmendorf et al. v. Clark, 143 La. 971, 79 So. 557, L.R.A.1918F, 802; Millannos, et al. v. Fatter, 18 La.App. 708, 138 So. 878.
Counsel for plaintiff also argue that if the truck was passing the Ford in the intersection the driver, no doubt, had his attention focused on the Ford and was not looking ahead and, therefore, did not see the little boy as soon as he should have seen him. Whether the truck had completely passed the Ford when the cars entered the intersection, it had certainly reached a point at which it was no longer necessary for the driver to watch the Ford. His entire attention could be devoted to what was in front of him. Furthermore, the little boy was at no time ahead of him. He ran into the side of the truck, having come out of the door of the grocery store, which was far to the side of the path of the truck. Between the driver of the truck and the little boy as he emerged from the grocery store was the automobile in which Capo was sitting, and this automobile screened the boy from the view of the driver until he emerged into the street a few feet from the curb and very near to the path on which the truck was passing.
Little stress was placed on the charge that the horn of the truck was not blown. It is shown that it was blown when the truck was about to pass the Ford some 75 feet before it reached the crossing. The driver had no reason to suspect that anyone was about to cross the intersection and there was no reason for him to sound his horn again.
There can be no doubt that the cause of the accident was the fact that the little boy emerged from the door of the grocery store when the truck was just about at the intersection and, without looking, ran diagonally across the intersection and into the side of that vehicle.
The first suggestion that the little boy was in a hurry comes from his father, who says that a few minutes before, when his son came home for lunch, he wanted some peanut butter and, "would not wait until we got through eating; he wanted it right then." It was to buy this butter that the boy had gone to the grocery store and he, no doubt, was in a hurry to return home to finish his lunch. The jar of peanut butter was found afterwards either clutched in his hand, or near him on the surface of the street. In line with the suggestion that the boy was in a hurry, we find the testimony of the eyewitnesses. The truck driver says "He ran out." McDevitt states that "He was going very fast" and adds that his attention was called to the boy by the way in which the door of the grocery was slammed as he came out. This witness admitted that he had not actually seen the little boy until the moment at which he ran into the truck, but we think that his entire mental picture of the occurrence shows plainly that the boy was running as fast as a little boy of that age can run, for he clearly states that he heard the door slam, and that there was something about that sound which indicated that whoever had slammed it was in a hurry, and that almost instantaneously the little boy ran into the side of the truck.
Capo says: "I saw the little boy dash out from the grocery store * * *."
We have little knowledge concerning the speed at which a little boy of six runs. In Pyaette v. New Orleans Public Service, Inc., 10 La.App. 300, 120 So. 483, 484, we discussed the rate at which a younger boy could run, and said: "* * * If the boy was running, as we feel sure he was, his speed must have been seven or eight miles an hour. * * *" If young Fourmeaux was running at a speed of only 7 miles an hour, it required less than three seconds for him to traverse the distance between the door of the grocery store out of which he ran and the side of the truck, for at 7 miles an hour he would have been moving at the rate of a little more than 10 feet a second, and for about 10 or 15 feet of the distance he was screened from the view of the driver by the Capo car.
Thus on the theory that the truck driver should have seen the boy and should have stopped the truck, plaintiff's case, *Page 734 
as we said in the Pyaette case, "hangs on too fine a thread." To hold that the truck driver was at fault it would be necessary that we say that a truck driver must not only immediately see every happening within the possible range of his vision but must also instantaneously react with mechanical precision. Human beings do not so react. See Millannos et al. v. Fatter, supra, and Elmendorf, et al. v. Clark, supra [143 La. 971, 79 So. 560, L.R.A.1918F, 802], in which the Supreme Court said: "* * * The experts admit that, when it comes to stopping an automobile within a given number of feet, it makes quite a difference whether the stop is being made by way of testing the possibilities in that regard, or is being made in an unexpected emergency. * * *"
Matulich v. Crockett et ux., La.App., 184 So. 748, relied on by counsel for plaintiff, is not in point. There the defendant drove an automobile past a stationary bus which was taking on and letting off passengers, and did so at a speed which we considered excessive, in view of the possibility that persons, especially young children, might be passing to or from the bus and might be screened from the view of the driver by the bus itself. The situation here does not justify the conclusion that the driver of the truck should have anticipated that there might have been young children running into the street from the other side of the Capo car.
Nor do we consider the cases of Burvant et ux. v. Wolfe,126 La. 787, 52 So. 1025, 29 L.R.A., N.S., 677, and Jacoby v. Gallaher, 12 La.App. 477, 126 So. 86, in point, for in each of those cases the young person who was involved should have been seen by the driver of the automobile who should not have approached without appreciating the possibility that the child might step into the path of the oncoming car. Referring to those cases, in Millannos et al. v. Fatter, supra [18 La.App. 708, 138 So. 882], we said: "* * * But in those and other similar cases, the children involved were, or should have been seen by the respective automobile drivers, whereas here, not only was the child not seen, but her presence was obscured by an obstruction. Therefore the rule applicable here is that there is no liability for injury, even to an immature child, where the child, at an unusual or unexpected place, suddenly runs into danger, when the automobile driver no longer has an opportunity to stop or to avert an accident." The rule quoted above is applicable.
Consequently, the judgment appealed from is affirmed at the cost of appellant.
Affirmed.